J.O. and P.O., Individually and as parents and next friends of D.O., J.B. and C.B., Individually and as parents and next friends of S.B., E.S. and B.S., Individually and as parents and next friends of M.S., Plaintiffs–Appellants,

v.

ALTON COMMUNITY UNIT SCHOOL DISTRICT 11, Eugene L. Frizzo, E.M. Ervin, David P. Lauschke, Verna J. Lewis, Joyce Robinson, Bob L. Perica, Sandra L. Strohmeier, all individually and in their official capacity as members of the Alton Community Unit School District 11 Board of Education, Dr. David B. VanWinkle, Individually and in his official capacity as Superintendent of the Alton Community Unit School District 11, James B. Clark, Individually and in his official capacity as Principal of East Middle School of the Alton Community Unit School District 11 and Lester Mann, Defendants–Appellees.

No. 89–1441.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1990.

Decided Aug. 3, 1990.

**268**

Lynn M. Travis, Coppinger, Carter, Schrempf & Blaine, Alton, Ill., for plaintiffs-appellants.

C. Dana Eastman, Jr., Thomas, Mottaz, Eastman & Sherwood, John M. Delaney, Jr., Allen, Mendenhall & Associates, Alton, Ill., Joseph B. McDonnell, Churchill & McDonnell, Belleville, Ill., for defendants-appellees.

Before WOOD, Jr., and COFFEY, Circuit Judges, and NOLAND, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

An involved procedural question complicates this action under 42 U.S.C. § 1983, originally brought in state court with a plethora of state claims. The defendants removed this case to federal court and promptly moved for a dismissal of the plaintiffs' section 1983 claims. The district court granted this motion and, with only pendent state claims remaining, sua sponte remanded the case back to state court. The plaintiffs now appeal the district court's actions.

## I. FACTUAL BACKGROUND

Bringing this action both individually and on behalf of their school-age children, the plaintiffs allege that Lester Mann sexually molested the children while employed as a teacher with the Alton Community Unit School District No. 11. In the federal counts of their complaint, the plaintiffs sue the school district, the school board members, the school superintendent, and the school principal [hereinafter "school defendants"] under 42 U.S.C. § 1983 for violation of their fourteenth amendment rights. In addition to the civil rights counts, the plaintiffs also sued these same defendants and Mann under state tort law. This suit was originally filed in the Third Judicial Circuit for the state of Illinois.

Unhappy with the state forum, the school defendants removed this case to the United States District Court for the Southern District of Illinois. Pursuant to FED.R. CIV.P. 12(b)(6), these defendants then filed motions to dismiss the plaintiffs' section 1983 claims as well as some of their state claims. The district court granted the defendants' motion as to the section 1983 claims. Left with only pendent state claims, the district court remanded the case back to state court on its own motion.

Having brought the case in state court originally, the plaintiffs are now displeased to have to return there without their civil rights claims. Therefore, the plaintiffs asked the district court to reconsider its remand order or, in the alternative, for leave to amend their complaint. In a short order, the district court concluded that once it had remanded the case to state court, it was without jurisdiction to take any fur-

---

* Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation.

ther action.[1] Therefore, the court denied the plaintiffs' motion. The plaintiffs have now appealed from all of the district court's orders.

## II. JURISDICTION

Although neither party addressed it, there are involved jurisdictional questions about our review of the district court's orders. In effect, the district court's actions encompassed two orders. First, the district court determined that the plaintiffs' complaint failed to state a cause of action under section 1983, dismissed that portion of the complaint, and refused to allow the plaintiffs to amend their complaint. Second, with only pendent state claims remaining, the district court exercised its discretion and remanded these claims back to state court. Thus, the district court's hold-

ings can be separately characterized as a dismissal order and a remand order. Although we are satisfied that we have jurisdiction to review both of the district court's orders, our jurisdiction is not so self-evident that we can dispense with a tedious discussion.

### A. Jurisdiction over Remand Order

Taking the district court's decisions in reverse order, the first jurisdictional question is whether we have the power to review the district court's order remanding this case on the discretionary grounds that only pendent state claims remain. Under 28 U.S.C. § 1447(d), "an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."[2] On its face, subsection

1. The plaintiffs filed their notice of appeal within thirty days of both the district court's original remand and its denial of reconsideration. Consequently, the timeliness of the plaintiffs' appeal does not depend upon their motion for reconsideration tolling the time in which to file a notice of appeal. See FED.R.APP.P. 4(a)(4). Therefore, we need not discuss the district court's power to entertain the plaintiffs' motion to reconsider and its effect on the timeliness of the plaintiffs' appeal.

2. The plaintiffs suggest that we have jurisdiction over this case under an exception listed in subsection 1447(d), providing for appellate review of "an order remanding a case to the State court from which it was removed pursuant to section 1443...." Thus, the question becomes whether this is a case that could be removed pursuant to section 1443. Codified amidst the other removal statutes and captioned "Civil rights cases," section 1443 might appear to encompass section 1983 actions. A reading of this section, however, plainly reveals that Congress had a different concern in mind when it passed section 1443. First, defendants may remove cases where they can show both that "(1) the right allegedly denied it arises under a federal law providing for specific rights *stated in terms of racial equality;* and (2) the removal petitioner is denied or cannot enforce the specified federal rights in the state courts due to some formal expression of state law." *Texas v. Gulf Water Benefaction Co.,* 679 F.2d 85, 86 (5th Cir.1982) (emphasis in original) (citing *Johnson v. Mississippi,* 421 U.S. 213, 219, 95 S.Ct. 1591, 1595, 44 L.Ed.2d 121 (1975)); *see* 28 U.S.C. § 1443(1). Second, defendants may remove cases where they are the target of a civil action or criminal prosecution for acts (or a refusal to act) taken under the color of authority derived from a law

providing for equal rights. *See* 28 U.S.C. § 1443(2). Basically, the purpose of section 1443 is to protect defendants from groundless state charges based on race, assuming that a federal court will be more protective of federally guaranteed equal rights. *See Walker v. Georgia,* 417 F.2d 5, 9 (5th Cir.1969). Congress intended section 1443 to provide for the removal of cases involving equal rights laws couched in terms of equality. Section 1443 simply does not apply to laws such as the due process clause and 42 U.S.C. § 1983 that work to guarantee rights available to all persons or citizens. *See Georgia v. Rachel,* 384 U.S. 780, 792, 86 S.Ct. 1783, 1790, 16 L.Ed.2d 925 (1966); *Sunflower County Colored Baptist Ass'n v. Trustees of Indianola Mun. Separate School Dist.,* 369 F.2d 795, 796 (5th Cir.1966); *New York v. Galamison,* 342 F.2d 255, 266 (2d Cir.), *cert. denied,* 380 U.S. 977, 85 S.Ct. 1342, 14 L.Ed.2d 272 (1965).

The inapplicability of section 1443 can also be seen in the procedural posture of this case. Although section 1443 was meant to protect a defendant's equal rights in state courts, in this case the plaintiffs are the parties arguing for its application. The plaintiffs are now trying to use section 1443 as a means to keep this case before the federal courts. Clearly, Congress did not intend section 1443 to guarantee a federal forum for plaintiffs' section 1983 claims, when the plaintiffs could have secured a federal forum for themselves by filing their suit in federal court initially. Simply stated, section 1443 was meant as a shield for racially persecuted defendants, and the plaintiffs' attempt to use it as a sword belies their own argument that it applies to this appeal. Because this is not a case that could be removed under section 1443, the exception in subsection 1447(d) does not allow appellate review in this case.

1447(d) appears to be an absolute bar against appellate review of any district court remand order.

But appearances can be deceiving; in practice, subsection 1447(d) has been given a less restrictive application. In *Thermtron Products v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), the Supreme Court held that subsection 1447(d) should be construed together with the grounds for remand in 28 U.S.C. § 1447(c). *See* 423 U.S. at 345–46, 96 S.Ct. at 590–91. The result was a rule allowing appellate court review of any remand order entered on grounds other than those specified in subsection 1447(c).[3] *See* 423 U.S. at 350–51, 96 S.Ct. at 592–93. Consequently, some courts interpreted subsection 1447(c) as stating the exclusive grounds for remand and disapproved district courts' remands on any other grounds, including remands of pendent state law claims. *E.g., Cook v. Weber*, 698 F.2d 907, 909–10 (7th Cir.1983).

In *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the Supreme Court overruled this lower-court interpretation of subsection 1447(c) and held that a district court may exercise its discretion to remand a case back to state court when all independent federal bases for jurisdiction are gone and only pendent state claims remain. 484 U.S. at 357, 108 S.Ct. at 622. In making this ruling, the Supreme Court's majority opinion acknowledged that subsection 1447(c) did not authorize such a remand but instead held that traditional principles of pendent jurisdiction allowed a district court to relinquish jurisdiction over a removed case that involved only pendent claims. *See* 484 U.S. at 348–52, 355 n. 11, 108 S.Ct. at 618–20, n. 11. Thus, by framing its decision in terms of pendent jurisdiction, *Carnegie–Mellon* reinforces the proposition that a remand of pendent state claims is outside the grounds for removal listed in subsection 1447(c).

This aspect of *Carnegie–Mellon* returns us to the rule earlier articulated in *Thermtron Products:* federal appellate courts have the power to review orders remanding a case on grounds other than those listed in subsection 1447(c). Read together, the holdings in *Carnegie–Mellon* and *Thermtron Products* authorize appellate jurisdiction over a district court's remand of pendent state claims. The most notable support for such an interpretation would be *Carnegie–Mellon* itself, where the Supreme Court heard an appeal from an appeal of a district court's remand of pendent state claims. In *Carnegie–Mellon* the Court decided the district court's power to order the remand but never suggested that it and the lower appellate court lacked the power to hear an appeal from the district court's order. Furthermore, a panel of this court divided over the propriety of a remand order in *Rothner v. City of Chicago*, 879 F.2d 1402 (7th Cir.1989), but uniformly commented that appellate jurisdiction would exist in the case of a remand of pendent state claims. *See* 879 F.2d at 1406, 1420. At least one other court of appeals has also read *Thermtron Products* and *Carnegie–Mellon* in a similar manner. *See In re Life Ins. Co. of North America*, 857 F.2d 1190, 1193 n. 1 (8th Cir.1988).

Based on *Thermtron Products, Carnegie–Mellon*, and this and other courts' comments, we find appellate jurisdiction exists over the part of the district court's order remanding the pendent state law claims, but we pause to comment on two other aspects of the case that complicate our decision. First, in addition to specifying the grounds for remand, subsection 1447(c) requires a certified copy of the district court's remand order to be mailed to the clerk of the state court. The record in this case does not indicate that the district court mailed a certified copy of its order to the state court, and we assume this means that the Illinois state courts have not yet reasserted jurisdiction over

---

**3.** At the time of *Thermtron Products,* subsection 1447(c) authorized remand of any cases removed "improvidently and without jurisdiction." 28 U.S.C. § 1447(c) (1982). That statute has now been amended to authorize remand of

cases on either the basis of a defect in removal procedure or the lack of subject matter jurisdiction in the federal court. 28 U.S.C.A. § 1447(c) (West Supp.1990).

this case. Nevertheless, there is no suggestion that the district court's failure to mail a certified copy of its order constitutes a jurisdictional bar to our review of the case. Despite its noncompliance with the procedural requirements, the district court clearly intended its remand order to be a final disposition of the case. A second problem arises with respect to the plaintiffs' direct appeal from the remand order. The Supreme Court's holding in *Thermtron Products*, indicates that our only power to review a remand order is through a petition for a writ of mandamus. *See* 423 U.S. at 352–53, 96 S.Ct. at 593–94. We will follow the same course as we have in the past and treat the direct appeal from the remand order as a petition for a writ of mandamus. *See Rothner*, 879 F.2d at 1418.

B. *Jurisdiction over Dismissal Order*

■ Deciding that we have jurisdiction over the part of the district court's holding that remands this case to the state court, we now must turn to the other part of the district court's holding that dismissed the plaintiffs' section 1983 claims and refused to allow an amendment of their pleadings. Two alternative bases support our jurisdiction over the district court's order to dismiss.

First, a proper review of the remand order should encompass all rulings leading up to that order, similar to the rule that a timely appeal from a final judgment brings up for review all prior rulings of the trial court. In this case, the district court dismissed the plaintiffs' section 1983 counts, the sole basis for federal jurisdiction. Because the district court then remanded the remaining pendent state claims, it would only be appropriate that the district court's dismissal of the federal jurisdictional basis be considered to determine whether the remand was appropriate.

Second and alternatively, appellate jurisdiction over the district court's dismissal order is authorized by a derivative of the *Thermtron Products* exception to the bar against appellate review of remand orders. Generally, courts have heard appeals from a district court's decision on the merits of a removed case, even where the district court has already purported to remand the case back to state court. *See, e.g., Waco v. United States Fidelity & Guar. Co.*, 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1935); *Price v. PSA, Inc.*, 829 F.2d 871, 874 (9th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988); *Gallea v. United States*, 779 F.2d 1403, 1404 (9th Cir.1986); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276–77 (9th Cir.1984). This rule provides appellate review, where it might otherwise not be available, to a party adversely affected by a district court's substantive decision. *Price*, 829 F.2d at 874; *Gallea*, 779 F.2d at 1404. In this case, our review of the district court's dismissal order will provide federal appellate consideration of the merits of the plaintiffs' federal claims, review that might not otherwise be available. Thus, we can also exercise jurisdiction over the district court's dismissal order as a substantive determination of the plaintiffs' claims.

III. DISCUSSION

The substance of the plaintiffs' appeal presents two issue for discussion. First, do the plaintiffs' claims of child molestation state a claim for deprivation of a constitutionally protected liberty interest on the basis of a special relationship between the school defendants and the minor schoolchildren? Second, should the district court have afforded the plaintiffs a chance to amend their complaint?

A. *Deprivation of a Liberty Interest*

■ In connection with the plaintiffs' section 1983 claim, it is first necessary to pinpoint their exact legal theory. The plaintiffs are only suing the school defendants for deprivation of their liberty interest; Mann, the actual child molester, has not been named in the civil rights counts of the plaintiffs' complaint, and the plaintiffs do not allege that any of the named school defendants participated in any acts of child molestation. In addition, the plaintiffs do not allege that the school defendants pro-

moted school policies that "encourag[ed] a climate to flourish where innocent [children] were victimized."[4] *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 730 (3d Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). Given the prohibition against respondeat superior liability in section 1983 suits, *see Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), the plaintiffs also do not argue the school defendants are liable merely as the child molester's employers. Instead, both in the district court and in this court, the plaintiffs argue that the school defendants had a "special relationship" to the schoolchildren, imposing an affirmative duty to provide for their safety and to prevent the child abuse that occurred in this case.

Unfortunately for the plaintiffs, the due process clause is not "a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Both this court and the Supreme Court have repeatedly rejected attempts to read the fourteenth amendment's due process clause as an affirmative charter of governmental duties. *See, e.g., id.* at 1004–07, *Archie v. City of Racine*, 847 F.2d 1211, 1220–23 (7th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). Only where the state has exercised its power so as to render an individual unable to care for himself or herself may an affirmative duty to protect that individual arise. *DeShaney*, 109 S.Ct. at 1005–06. But beyond the case of incarcerated prisoners and involuntarily committed mental patients, the Supreme Court has never recognized such a duty. *See Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)

(mental patients); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (prisoners).

■ We do not suggest that prisoners and mental patients are an exhaustive list of all persons to whom the state owes some affirmative duties, but the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises. Whatever duty of protection does arise is best left to laws outside the Constitution, as Illinois has done. *See, e.g., Eversole v. Wasson*, 80 Ill.App.3d 94, 398 N.E.2d 1246, 35 Ill.Dec. 296 (1980) (recognizing student's tort suit against school district for injuries inflicted in a teacher's assault).

The state's custody over their person is the most distinguishing characteristic in the cases of the mental patient and the prisoner; these people are unable to provide for basic human needs like food, clothing, shelter, medical care, and reasonable safety. *See DeShaney*, 109 S.Ct. at 1005. At most, the state might require a child to attend school, *see* ILL.REV.STAT. ch. 122, ¶ 26–2, but it cannot be suggested that compulsory school attendance makes a child unable to care for basic human needs. The parents still retain primary responsibility for feeding, clothing, sheltering, and caring for the child. By mandating school attendance for children under the age of sixteen, the state of Illinois has not assumed responsibility for their entire personal lives; these children and their parents retain substantial freedom to act. The analogy of a school yard to a prison may be a popular one for school-age children, but we cannot recognize constitutional duties on a child's lament. Schoolchildren are not like mental patients and prisoners such

---

**4.** In their complaint, the plaintiffs do allege that the acts or omissions of the school defendants were committed "under the color of pretenses of the statutes, ordinances, regulations, customs, and usages of the State of Illinois, and the rules, policies, and directions of the Alton Community Unit School District No. 11." Reading the complaint as a whole, this language was obviously intended to satisfy section 1983's "color of state law" requirement and, even with a liberal construction of the complaint, does not provide

notice that the plaintiffs allege the school defendants promulgated policies that fostered child abuse. Furthermore, the plaintiffs literally allege only that the school defendants' actions were taken *under* the color of school district policies, not that these defendants had any role in enacting those policies. For these reasons, we will not construe the complaint as alleging that the school defendants were responsible for official policies that allowed the schoolchildren to be sexually abused.

that the state has an affirmative duty to protect them.

Before we leave this constitutional discussion, we need to comment on other rights that the plaintiffs claim were taken from them. In addition to a taking of a liberty interest in violation of the fourteenth amendment, the plaintiffs also claim they were deprived of the right to an education free from government interference and of their fourth amendment search and seizure rights, as incorporated by the fourteenth amendment. We do not express any opinion on the merits of the plaintiffs' alternative characterization of their rights except to say that it adds little to their case. The plaintiffs do not allege that any of the school defendants deprived them of these other civil liberties but that the school defendants' agent violated these liberties. What the plaintiffs need to show is not an expansive list of liberties allegedly taken from them but some action by the defendants that would justify the imposition of liability. The plaintiffs have failed to make this showing no matter how their rights are characterized, and for this reason their claims must fail.

## B. *Amendment of Pleadings*

The foregoing discussion dispenses of the plaintiffs' claims on the basis of the complaint as it stands before us, but we do not believe that the plaintiffs could never allege sufficient facts to support a section 1983 claim. *See Stoneking v. Bradford Area School Dist.*, 882 F.2d 720 (3d Cir. 1989) (recognizing section 1983 cause of action where school administrators enacted policies that allowed child sexual abuse to flourish). Thus, the plaintiffs should have been allowed a chance to replead their complaint, but after the district court dismissed the plaintiffs' section 1983 claim and sua sponte remanded the case, it refused to allow an amendment of the pleadings on the basis that jurisdiction over the case had returned to the state courts. In the future, a district court may avoid this conundrum by reserving the decision to remand rather than remanding sua sponte immediately after a dismissal of all federal claims. An immediate remand fails to give the plaintiff a chance to cure defects in his complaint.

The plaintiffs have asked this court, should we hold against them on the merits, to return this case to the district court with instructions to allow an amendment of their pleadings. While it is usually within the district court's discretion to allow an amendment, in this case the district court believed it had no discretion to exercise because the case was no longer within its jurisdiction. The district court found itself powerless to allow an amendment. In this reasoning, the district court was probably correct; the majority of courts hold that once a district court remands a case, it is usually powerless to take any further action on that case. *E.g., Seedman v. United States District Court*, 837 F.2d 413, 414 (9th Cir.1988); *In re La Providencia Dev. Corp.*, 406 F.2d 251, 252–53 (1st Cir.1969); *Board of Educ. v. City–Wide Comm. for the Integration of Schools*, 342 F.2d 284, 285 (2d Cir.1965); *City of Valparaiso v. Iron Workers Local 395*, 118 F.R.D. 466, 468–69 (N.D.Ind.1987). *Contra 67 Goffle Road, Inc. v. Playboy Hotel Casino*, 527 F.Supp. 566, 569 (D.N.J.1981).

Nevertheless, this is not the usual case. As we discussed above, we have jurisdiction to hear an appeal over the entire case, including both the district court's decision to dismiss the plaintiffs' federal claims as well its decision to remand the case. When we would have jurisdiction to review a remand order, it would be efficient to allow the district court also to retain jurisdiction to reconsider its order or, as in this case, to allow an amendment of the pleadings. *See In re Shell Oil Co.*, 631 F.2d 1156, 1158 (5th Cir. Unit A 1980). Of course, the filing of a notice of appeal would end the district court's jurisdiction over its remand order as it would in any other case. We leave for another day the question of whether a district court has the power to take any further action in a case after it issues a remand order over which no appellate jurisdiction exists. We only hold that where an exception to the general bar against the nonreviewability of remand orders applies, the district court has the

power to reconsider its order during the time for filing a notice of appeal.

Allowing a district court to reconsider its remand order is no more disruptive of the litigation process than is allowing an appeal from that order: both reconsideration and an appeal present the danger that the remand order will be rescinded thereby disrupting state proceedings that may have restarted after the remand.[5] Thus, during the time when an appeal can follow a remand order, it is also appropriate for the district court to retain the power to modify its earlier orders. Such a procedure may have salutary benefits by eliminating the necessity for an appeal, as might have happened in this case had the district court allowed the plaintiffs a chance to amend their pleadings.

■ Normally, we are slow to overturn a district court's decision not to allow an amendment of pleadings. In the present case, however, the district court did not make such a decision. Confronted with a bewildering procedural situation, the district court understandably believed it had no power to allow an amendment. The federal rules generally allow for a liberal amendment of pleadings, *see* FED.R.CIV.P. 15(a), and we believe that justice would be served by returning this case to district court with instructions to allow the plaintiffs to replead their section 1983 claims. In allowing an amendment, we remind the plaintiffs that they must make new, good faith factual allegations, pleading a new theory of liability other than the one rejected here. *See* FED.R.CIV.P. 11. We have rejected the plaintiffs' allegations that the school defendants, simply by virtue of their relationship to the plaintiffs, are liable for their failure to prevent the child abuse. Should the plaintiffs be unable to replead a proper federal cause of action, the district court can then remand the pendent state claims back to state court under *Carnegie-Mellon.*

IV. CONCLUSION

In summary, we have found appellate jurisdiction to exist over both the district court's dismissal of the plaintiffs' section 1983 claims and its remand of the pendent claims to state court. While we agree that the plaintiffs did not state a proper section 1983 cause of action on their original complaint, we believe that the district court should have allowed them a chance to replead. Accordingly, the order of the district court dismissing the plaintiffs' section 1983 claims is AFFIRMED; a writ of mandamus will issue requiring the district court to rescind its order remanding the case back to state court; and the case is RE-MANDED with directions. The parties will bear their own costs on appeal.

---

5. The danger of disrupting ongoing state proceedings in this case appears to have been eliminated. The record does not reveal that the district court clerk mailed a certified copy of the remand order to the state court, a prerequisite to send the case back. *See* 28 U.S.C. § 1447(c). While such a procedure may minimize the possibility of disruption of state judicial proceedings by the federal appellate process, its informality may create problems in the future. If the parties to this suit were concerned that our decision would interrupt state court proceedings, the proper procedure would have been to apply for a stay of these proceedings pending our disposition of the appeal.