Annette SEXSON, Wayne Watson, and Common Cause, Inc., Plaintiffs,

v.

Beurt R. SERVAAS, in his official capacity as the President of the Marion County City–County Council; William H. Hudnut, in his official capacity as Mayor of the City of Indianapolis; The Marion County City–Council, and the Marion County Election Board, Defendants.

No. IP 91–451 C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 10, 1994.

Stephen Laudig, Laudig & George, Kevin McShane, McShane & Inman, Marilyn Moores, Cohen & Malad, Indianapolis, IN, for plaintiffs.

Wayne C. Ponader, Jeffrey S. Koehlinger, Bose McKinney & Evans, Indianapolis, IN, for defendants.

## ENTRY

BARKER, Chief Judge.

On January 5, 1994, the Court dismissed this action and remanded the remaining state law claims to the Marion County Superior Court. The Defendants have moved the Court for reconsideration of four aspects of that decision: (1) whether the case of *Voinovich v. Quilter*, —— U.S. ——, 113 S.Ct. 1149, 122 L.Ed.2d 500 (1993) affects the Court's jurisdiction over state reapportionment claims; (2) whether the Court continues to have removal jurisdiction under 28 U.S.C. § 1443(2); (3) whether the Court's decision to remand the state claims in this action pursuant to 28 U.S.C. § 1367 was appropriate; and (4) whether the Court's decision to remand amounts to an abuse of discretion. For the reasons explained below, the Defendants' motion is granted in part and denied in part.

Recapping once again the procedural history of this case, the Defendants removed this action to federal court, pursuant to 28 U.S.C. § 1443(2), which provision is commonly known as the "refusal clause". It provides that:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> . . . .
>
> (2) For any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*

28 U.S.C. § 1443(2) (emphasis added). In its Entry on May 3, 1991, the Court upheld the Defendants' removal, finding that the Defendants " 'alleged at least a colorable claim' " that their refusal to comply with state apportionment requirements was because those requirements were inconsistent with a law providing for equal rights, to wit, the Voting Rights Act. *See* Court's Entry of 5/3/91, at 5, *citing, Bridgeport Educ. Ass'n v. Zinner,* 415 F.Supp. 715, 722–23 (D.Conn.1976); *see also White v. Wellington,* 627 F.2d 582, 586 (2nd Cir.1980). Thereafter, by agreement of the parties, the case was submitted for decision on a written record and the parties' briefs; no "live" testimony was presented to the Court.

Before the Court could render a final decision in this matter, the United States Supreme Court handed down a decision directing federal courts to refrain "from intervening in state apportionment in the absence of a violation of federal law precisely because it is the domain of the States, and not the federal courts, to conduct apportionment in the first place." *Voinovich v. Quilter,* —— U.S. ——, ——, 113 S.Ct. 1149, 1156, 122 L.Ed.2d 500 (1993). There being only state apportionment claims remaining to be adjudicated in this case, it was ordered dismissed for want of federal jurisdiction and remanded to state court.

### 1. *Does Voinovich Affect the Court's Jurisdiction?*

█ The Defendants contend that *Voinovich* should "be read to mean *only* that, in

the context of a pure Section 2 challenge before a federal court pursuant to its original jurisdiction, the court may not intervene in a state's reapportionment effort under the authority of Section 2 unless an actual Section 2 violation is proven." *Defendants' Brief in Support of Motion to Reconsider*, at 5 (emphasis in original). The Defendants also urge the Court to differentiate between "a federal district court's power to *intervene* for remedial purposes in a state's reapportionment effort" versus "a federal district court's ability to *consider* and *resolve* claims that are otherwise properly before it (on any basis) for decision." *Id.*

Nothing in the Supreme Court's opinion in *Voinovich* indicates that its holding should be read so stingily as to limit it to the precise facts presented in that case. The Supreme Court's statement that apportionment lies within the domain of the States and not the federal courts plainly indicates that federal courts do not stand on equal footing with state institutions when it comes to matters of state apportionment. What the Supreme Court disapproved of in *Voinovich* was the federal court's decision to reapportion without first finding a violation of federal law. That this is true is clear from the reason the Court offered for its objection to the district court's "intervention"; reapportionment conducted outside the auspices of federal law was beyond the court's authority "precisely because it is the domain of the States, and not the federal courts, to conduct apportionment in the first place." *Voinovich*, —— U.S. at ——, 113 S.Ct. at 1156.

Defendants' narrow reading of *Voinovich* and the distinction they assert between the power to "intervene" as opposed to the power to "consider and resolve claims" would effectively nullify the Supreme Court's justification for its objection to the district court's actions. The procedural vehicle that carries the federal court into the States' domain, whether to adjudicate exclusively a state law claim or otherwise, is of no consequence. What matters is that "federal courts . . . respect the States' apportionment choices unless those choices contravene federal require-

ments." *Id.* at ——, 113 S.Ct. at 1157. In jurisdictional terms, therefore, the Supreme Court has determined that before federal courts may require or perform state apportionment they must first establish a violation of federal law. Accordingly, while it is true that the *Voinovich* case was not removed to federal court pursuant to the "refusal clause," this Court is persuaded that the Supreme Court's holding nonetheless controls the determination of which courts are empowered to resolve the remaining issues here, issues which deal exclusively with Indiana's local reapportionment statute. *See* I.C. 36–3–4–3(a).

### 2. *Does the Court Continue to Have Removal Jurisdiction?*

■ In its Entry of January 5, 1994, the Court noted that the Defendants conceded that Section 2 did not *require* the City-County Council to draw the councilmanic boundaries precisely as they are presently configured. Defendants stated that the arrangement of boundaries was one of perhaps several other possible ways to comply with Section 2 requirements, a position from which they do not depart even in their motion to reconsider. That concession, in this Court's view, constitutes an abandonment of the Defendants' affirmative defense:

> [The Defendants affirmative] defense is "that the districting obligations imposed by I.C. 36–3–4–3(a) directly conflict with Defendants' obligations under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and that Plaintiffs' claims under I.C. 36–3–4–3(a) are therefore specifically preempted by the *requirements* of federal law." Answer, at 5. The Defendants now advise the Court that in fact Section 2 *does not require* the district boundaries to be drawn as they are presently configured, thereby undermining their contention that the Plaintiffs' claims are preempted by "*the requirements* of federal law". *Id.*

Entry of January 5, 1994, at 5 (emphasis added). This concession indicates to the Court that Section 2 is no longer an issue in this case,[1] leaving for resolution only the

---

1. In its January 5, 1994 entry, the Court wrote:

[T]he Defendants acknowledge that Section 2 does not require the Council to draw the boundaries as they are presently configured:

original state claims that were presented to the Marion County Superior Court. After that concession, this Court was in the untenable position of having permitted removal pursuant to the "refusal clause" only to discover that an exercise of that jurisdiction over the remaining state claims would set it on a collision course with the Supreme Court's directive in *Voinovich.* This Court does not view § 1443 as a platform from which to stage an end run around the Supreme Court directive into an area that has been determined to be within the exclusive province of the States. If this Court, for instance, were ultimately to determine that the Council has violated Indiana's reapportionment statute, it would of necessity be required to formulate and oversee the implementation of an appropriate remedy (*i.e.* reconfiguring legislative boundaries), an undertaking which undoubtedly would founder for want of any federal, statutory guidance. Navigating through these uncharted seas is precisely what the Supreme Court must have feared and what must be seen as underlying its directives to the lower courts.

In addition, Defendants have relied on § 1443 in a way that in our view was not contemplated by Congress. Given the significance—indeed the primacy—of Section 2 of the Voting Rights Act to the Defendants' removal of this case to federal court and to their defense of the Plaintiffs' state law claims, the Court understandably anticipated that its resolution of this litigation would involve an explication of Section 2 jurisprudence. Thus, the Court was surprised when the Defendants' trial brief, spanning nearly fifty pages, devoted less than one page of discussion to Section 2 issues. There being no intervening shifts in the law or facts of this case, between the time of the filing of the removal petition and the present to warrant a change in strategy, this action nonetheless now centers exclusively on state law issues. Defendants' professed basis for removal was a conflict between state and federal law, which conflict has now apparently disappeared. Section 1443 cannot properly be read to provide an avenue to federal court, whereby, once removal is obtained, the defendant is free to jettison the federal baggage and remain in federal court. As the Seventh Circuit noted in *J.O. v. Alton Community Unit School District 11,* 909 F.2d 267 (7th Cir.1990): "Basically, the purpose of section 1443 is to protect defendants from groundless state charges based on race, assuming that a federal court will be more protective of federally guaranteed equal

> *While Section 2, standing alone, may not expressly require the exact configuration of the boundaries of the 25 single-member districts as they are presently embodied in the Council Plan,* the Council's judgment, contained in the Council Plan, as to what Section 2 required of it in creating African–American, majority, single-member districts, when coupled with the fundamental presumption of deference that attaches to the Council's reapportionment effort, controls this Court's resolution of, and in essence "preempts," Plaintiffs' state law compactness and equal population challenges to the Council Plan on the facts of this case.

Defendants' Response to the Court's November 5, 1993 Order, at 1–2.
Entry of January 5, 1994, at 5 (emphasis added). The Defendants are bound by their pleadings; in their answer, they set forth the following affirmative defense:

> [T]he Defendants allege and state that the districting obligations imposed by I.C. 36–3–4–3(a) directly conflict with Defendants' obligations under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and that Plaintiffs' claims under I.C. 36–3–4–3(a) are therefore

specifically preempted by the requirements of federal law.

Answer, at 5. In its simplest terms, the Court understood this defense to be that "Section 2 required us to draw the boundaries the way we did. If Indiana law requires something different, that is unfortunate but Section 2 via the Supremacy Clause requires this result." That interpretation was confirmed in the Defendants' trial brief:

> [T]he wisdom and *necessity* of creating *these seven,* 60% African–American, majority districts has [sic] already been recognized by this Court, *see Baird,* October 23, 1991 Entry at 1, 11, and affirmed by both the Seventh Circuit, *see id.,* 976 F.2d 357 and the United States Supreme Court, *see id.,* [—— U.S. ——, 113 S.Ct. 2334, 124 L.Ed.2d 246] in *Baird,* which rulings are now the law of this Circuit. (emphasis added).

Defendants' Trial Brief, at 4–5. The Court was quick to point out that neither this Court nor any other had recognized such a "necessity". If Section 2 does not require the Council to draw the boundaries as they are presently configured, as the Defendants have admitted, then their affirmative defense as they have framed it is no longer at issue. "Compliance" is not synonymous with "required".

rights." *Id.* at 269 n. 2.[2]  This Court is obliged to insure that its jurisdiction not be exercised in a manner beyond Congress' direction or contemplation.

### 3. *Was the Court's Remand Pursuant to § 1367 Appropriate?*

When only state law claims remained before this Court, we refused to exercise "supplemental jurisdiction" over those claims, ordering them remanded to Marion County Superior Court. *See* Entry of January 5, 1994, at 7–8. The Defendants argue that the state law claims were always before the Court, pursuant to § 1443(2), and thus the Section 2 finding does not affect the Court's removal jurisdiction over them.

Defendants correctly assert that the Court's characterization of its jurisdiction over the state law claims should have been something other than supplemental jurisdiction, which is provided for in the following terms:

### § 1367. Supplemental jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). However, that mischaracterization is of no ultimate consequence. The Voting Rights Act claims which ordinarily would invoke the original jurisdiction of this Court were raised here via an affirmative defense, which is an insufficient basis on which to confer federal jurisdiction. *See Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 807, 808, 106 S.Ct. 3229, 3231, 3232, 92 L.Ed.2d 650 (1986) ("A defense that raises a federal question is inadequate to confer federal jurisdiction.").

### 4. *Abuse of Discretion?*

Finally, Defendants' contention that this Court's order of remand may well be an abuse of discretion, given the length of time that this case has been pending, is viewed primarily as a rhetorical flourish. It would be clearly improper for the Court to forge ahead and resolve the remaining state law issues in the face of Supreme Court directives to the contrary. It is axiomatic in federal jurisprudence that if jurisdiction is lacking, the case must be dismissed. Whether such a finding is made immediately after the complaint is filed or on the eve of a court's decision does not alter the necessity of dismissal. A federal court rendering a decision without jurisdiction creates a nullity, leading to dismissal at some later point in the litigation and further delaying the case's final resolution on the merits. *See, e.g., Gash Associates v. Village of Rosemont,* 995 F.2d 726 (7th Cir.1993) (vacating district court's judgment and remanding case with instructions to dismiss for want of jurisdiction). Even so, the Court cannot accept Defendants' argument that the parties will be prejudiced by the Court's delayed decision to remand. Not until June of 1993 was this case fully briefed; the Court's work commenced four months thereafter. Because the record as it now exists is complete, the only remaining task facing the appropriate court is to render a decision. There is sufficient time to permit that to happen without the delay interfering with upcoming elections.

### CONCLUSION

The Defendants' motion to reconsider is granted in part and denied in part. Absent a violation of federal law, the Court lacks jurisdiction to resolve state apportionment issues. That portion of the Court's entry of January 5, 1994, which discussed supplemental jurisdiction is vacated. The Court's order of dismissal of this action without prejudice stands, one effect of which of course is to trigger the parties' appeal rights. The Court also allows

**2.** The Court concurs with Defendants' claim that nothing in § 1443 requires that there be a conflict between a state and federal law to warrant removal. However, Defendants framed their case in those terms and on that basis were able to obtain its removal.

its order of remand to stand,[3] similarly appealable under 28 U.S.C. § 1447(d), since this matter was brought to this Court pursuant to § 1443.

It is so ORDERED.

---

**3.** Section 1447(c) provides: "If any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."