Jamie S. NABOZNY, Plaintiff–Appellant,

v.

Mary PODLESNY, William Davis, Thomas Blauert, et al., Defendants–Appellees.

No. 95–3634.

United States Court of Appeals, Seventh Circuit.

Argued March 28, 1996.

Decided July 31, 1996.

Patricia M. Logue (argued), Lambda Legal Defense and Education Fund, Chicago, IL, David Buckel, Lambda Legal Defense and Education Fund, New York City, for Jamie S. Nabozny.

Timothy J. Yanacheck (argued), Stilp & Cotton, Madison, WI, for Mary Podlesny, William Davis, Thomas Blauert and Ashland Public School District.

Cynthia H. Hyndman, Robinson, Curley & Clayton, Chicago, IL, for National Ass'n of School Psychologists, National Ass'n of Social Workers, Horizons Community Service and Parents, Family, and Friends of Lesbians and Gays.

Before BAUER, ESCHBACH, and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

Jamie Nabozny was a student in the Ashland Public School District (hereinafter "the District") in Ashland, Wisconsin throughout his middle school and high school years. During that time, Nabozny was continually harassed and physically abused by fellow students because he is homosexual. Both in middle school and high school Nabozny reported the harassment to school administrators. Nabozny asked the school officials to protect him and to punish his assailants. Despite the fact that the school administrators had a policy of investigating and punishing student-on-student battery and sexual harassment, they allegedly turned a deaf ear to Nabozny's requests. Indeed, there is evidence to suggest that some of the administrators themselves mocked Nabozny's predicament. Nabozny eventually filed suit against several school officials and the District pursuant to 42 U.S.C. § 1983 alleging, among other things, that the defendants: 1) violated his Fourteenth Amendment right to equal protection by discriminating against him based on his gender; 2) violated his Fourteenth Amendment right to equal protection by discriminating against him based on his sexual orientation; 3) violated his Fourteenth Amendment right to due process by exacerbating the risk that he would be harmed by fellow students; and, 4) violated his Fourteenth Amendment right to due process by encouraging an environment in which he would be harmed.[1] The defendants filed a motion for summary judgment, which the district court granted. Nabozny appeals the district court's decision. Because we agree with the district court only in part, we affirm in part, reverse in part, and remand.

## I.

Before discussing the facts of this case, we must delineate the scope of the record properly before the court. The defendants argue that many of the facts relied on by Nabozny in his appellate brief were not presented to the district court. The defendants' argument is based on the district court's pretrial order dated March 24, 1995, in which the court ordered the parties to submit motions for summary judgment by August 15, in accordance with the local rule on summary judgment. The local rule requires parties filing motions for summary judgment to submit proposed findings of fact, with citations to the record. The defendants did so. The local rule requires parties responding to summary judgment motions to present evidence, with citations to the record, that establishes genuine issues of material fact for trial. Nabozny responded to the defendants' summary judgment motion by submitting a litany of conclusory statements, largely unsupported by citations to the rec-

---

1. Only Nabozny's constitutional claims are before this court. We will limit our discussion to those claims.

ord.[2] The defendants maintain that absent a more definitive response by Nabozny, the district court relied on the defendants' proposed findings of fact to grant summary judgment in the defendants' favor.

We strictly enforce local rules, such as the summary judgment rule in this case, holding that when the nonmovant fails to reply in the proper form he concedes the movant's version of the facts. *See* Fed.R.Civ.P. 56(e); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994). Nabozny's failure to comply with the local rule entitled the district court to limit its inquiry to whether, viewed in the light of the facts presented by the defendants, judgment is appropriate as a matter of governing law. Fed.R.Civ.P. 56(e); *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993). It is unclear whether the district court meant to limit the record to the undisputed facts set forth in the defendants' summary judgment motion. The district court's summary judgment order made no mention of the local rule, or Nabozny's failure to comply with it.

For our purposes herein, we need not decide whether the court relied on the local rule. Regardless of what the district court intended, it is clear from the court's order that it did not limit its review to the defendants' grounds for summary judgment and proposed findings of fact. For example, the defendants sought summary judgment on Nabozny's equal protection claims on the basis that Nabozny had failed to allege that any of the defendants participated in or encouraged the harassment that Nabozny suffered. The district court, however, granted summary judgment on Nabozny's gender equal protection claim on the ground that no evidence in the record suggested that the defendants treated Nabozny differently because of his gender; a different legal basis than that offered by the defendants. The district court

offered no rationale for disposing of Nabozny's sexual orientation equal protection claim. As for Nabozny's due process claims, the defendants offered no rationale for rejecting Nabozny's claim that the defendants enhanced the risk of harm to Nabozny. The district court concluded *sua sponte* that nothing in the record supported Nabozny's claim. What is more, throughout the district court's factual account and legal analysis, the court relied in part on Nabozny's affidavit to establish facts presented in neither party's proposed findings of fact.

Our court has previously ruled that "[i]f the district court is inclined to venture outside the moving party's grounds for summary judgment and statement of undisputed facts, the court must be careful to ensure that the record reveals no issue of material fact." *Brown v. United States*, 976 F.2d 1104, 1110 (7th Cir.1992). If a district court relies on either a local rule or Federal Rule 56(c) to limit the record for the purposes of summary judgment to the moving party's undisputed facts, then the court cannot look beyond the moving party's motion and selectively incorporate legal theories or facts that support the motion. If the court elects to rely on legal arguments and evidence not incorporated in, or submitted with, the summary judgment motion, the court is obligated to consider the entire record "to ensure that the record reveals no issue of material fact." *Id.* Because the district court elected to venture beyond the parameters of the defendants' summary judgment papers to dispose of some of Nabozny's claims, the entire record was before the district court regarding those claims, including "the pleadings, depositions, answers to interrogatories, and admissions on file, [and] affidavits...." Fed. R.Civ.P. 56(c). Therefore, Nabozny is entitled to rely on the entire record on appeal.[3]

---

**2.** Nabozny's "Proposed Findings of Fact" generally consisted of "agrees in entirety" or "disagrees in entirety," responding to the defendants' proposed findings of fact.

**3.** Nabozny is clearly entitled to rely on the entire record regarding his equal protection claims. The district court granted summary judgment on Nabozny's gender equal protection claim on a basis not proffered by the defendants. The court did not discuss its basis for granting summary

judgment on Nabozny's sexual orientation equal protection claim. We will assume that the court's reasoning was the same regarding Nabozny's gender and sexual orientation claims. We need not decide whether Nabozny is entitled to rely on the entire record regarding his due process claims. As our opinion will make clear, even if we assume arguendo that Nabozny can rely on the entire record, he cannot prevail on his due process theories.

With the scope of the record delineated, we turn to a discussion of the facts. We review summary judgment awards *de novo,* considering the record in the light most favorable to the non-movant. *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148–49 (7th Cir. 1994). Therefore, the facts are presented in the light most favorable to Nabozny.

## II.

From his birth in 1975, Nabozny lived in Ashland, Wisconsin. Throughout his childhood, adolescence, and teenaged years he attended schools owned and operated by the Ashland Public School District. In elementary school, Nabozny proved to be a good student and enjoyed a positive educational experience.

When Nabozny graduated to the Ashland Middle School in 1988, his life changed. Around the time that Nabozny entered the seventh grade, Nabozny realized that he is gay. Many of Nabozny's fellow classmates soon realized it too. Nabozny decided not to "closet" his sexuality, and considerable harassment from his fellow students ensued. Nabozny's classmates regularly referred to him as "faggot," and subjected him to various forms of physical abuse, including striking and spitting on him. Nabozny spoke to the school's guidance counselor, Ms. Peterson, about the abuse, informing Peterson that he is gay. Peterson took action, ordering the offending students to stop the harassment and placing two of them in detention. However, the students' abusive behavior toward Nabozny stopped only briefly. Meanwhile, Peterson was replaced as guidance counselor by Mr. Nowakowski. Nabozny similarly informed Nowakowski that he is gay, and asked for protection from the student harassment. Nowakowski, in turn, referred the matter to school Principal Mary Podlesny; Podlesny was responsible for school discipline.

Just before the 1988 Winter holiday, Nabozny met with Nowakowski and Podlesny to discuss the harassment. During the meeting, Nabozny explained the nature of the harassment and again revealed his homosexuality. Podlesny promised to protect Nabozny, but took no action. Following the holi-

day season, student harassment of Nabozny worsened, especially at the hands of students Jason Welty and Roy Grande. Nabozny complained to Nowakowski, and school administrators spoke to the students. The harassment, however, only intensified. A short time later, in a science classroom, Welty grabbed Nabozny and pushed him to the floor. Welty and Grande held Nabozny down and performed a mock rape on Nabozny, exclaiming that Nabozny should enjoy it. The boys carried out the mock rape as twenty other students looked on and laughed. Nabozny escaped and fled to Podlesny's office. Podlesny's alleged response is somewhat astonishing; she said that "boys will be boys" and told Nabozny that if he was "going to be so openly gay," he should "expect" such behavior from his fellow students. In the wake of Podlesny's comments, Nabozny ran home. The next day Nabozny was forced to speak with a counselor, not because he was subjected to a mock rape in a classroom, but because he left the school without obtaining the proper permission. No action was taken against the students involved. Nabozny was forced to return to his regular schedule. Understandably, Nabozny was "petrified" to attend school; he was subjected to abuse throughout the duration of the school year.

The situation hardly improved when Nabozny entered the eighth grade. Shortly after the school year began, several boys attacked Nabozny in a school bathroom, hitting him and pushing his books from his hands. This time Nabozny's parents met with Podlesny and the alleged perpetrators. The offending boys denied that the incident occurred, and no action was taken. Podlesny told both Nabozny and his parents that Nabozny should expect such incidents because he is "openly" gay. Several similar meetings between Nabozny's parents and Podlesny followed subsequent incidents involving Nabozny. Each time perpetrators were identified to Podlesny. Each time Podlesny pledged to take action. And, each time nothing was done. Toward the end of the school year, the harassment against Nabozny intensified to the point that a district attorney purportedly advised Nabozny to take time off from school. Nabozny took one and a half weeks

off from school. When he returned, the harassment resumed, driving Nabozny to attempt suicide. After a stint in a hospital, Nabozny finished his eighth grade year in a Catholic school.

The Catholic school attended by Nabozny did not offer classes beyond the eighth grade. Therefore, to attend the ninth grade, Nabozny enrolled in Ashland High School. Almost immediately Nabozny's fellow students sang an all too familiar tune. Early in the year, while Nabozny was using a urinal in the restroom, Nabozny was assaulted. Student Stephen Huntley struck Nabozny in the back of the knee, forcing him to fall into the urinal. Roy Grande then urinated on Nabozny. Nabozny immediately reported the incident to the principal's office. Nabozny recounted the incident to the office secretary, who in turn relayed the story to Principal William Davis. Davis ordered Nabozny to go home and change clothes. Nabozny's parents scheduled a meeting with Davis and Assistant Principal Thomas Blauert. At the meeting, the parties discussed numerous instances of harassment against Nabozny, including the restroom incident.

Rather than taking action against the perpetrators, Davis and Blauert referred Nabozny to Mr. Reeder, a school guidance counselor. Reeder was supposed to change Nabozny's schedule so as to minimize Nabozny's exposure to the offending students. Eventually the school placed Nabozny in a special education class; Stephen Huntley and Roy Grande were special education students. Nabozny's parents continued to insist that the school take action, repeatedly meeting with Davis and Blauert among others. Nabozny's parents' efforts were futile; no action was taken. In the middle of his ninth grade year, Nabozny again attempted suicide. Following another hospital stay and a period living with relatives, Nabozny ran away to Minneapolis. His parents convinced him to return to Ashland by promising that Nabozny would not have to attend Ashland High. Because Nabozny's parents were unable to afford private schooling, however, the Department of Social Services ordered Nabozny to return to Ashland High.

In tenth grade, Nabozny fared no better. Nabozny's parents moved, forcing Nabozny to rely on the school bus to take him to school. Students on the bus regularly used epithets, such as "fag" and "queer," to refer to Nabozny. Some students even pelted Nabozny with dangerous objects such as steel nuts and bolts. When Nabozny's parents complained to the school, school officials changed Nabozny's assigned seat and moved him to the front of the bus. The harassment continued. Ms. Hanson, a school guidance counselor, lobbied the school's administration to take more aggressive action to no avail. The worst was yet to come, however. One morning when Nabozny arrived early to school, he went to the library to study. The library was not yet open, so Nabozny sat down in the hallway. Minutes later he was met by a group of eight boys led by Stephen Huntley. Huntley began kicking Nabozny in the stomach, and continued to do so for five to ten minutes while the other students looked on laughing. Nabozny reported the incident to Hanson, who referred him to the school's "police liaison" Dan Crawford. Nabozny told Crawford that he wanted to press charges, but Crawford dissuaded him. Crawford promised to speak to the offending boys instead. Meanwhile, at Crawford's behest, Nabozny reported the incident to Blauert. Blauert, the school official supposedly in charge of disciplining, laughed and told Nabozny that Nabozny deserved such treatment because he is gay. Weeks later Nabozny collapsed from internal bleeding that resulted from Huntley's beating. Nabozny's parents and counselor Hanson repeatedly urged Davis and Blauert to take action to protect Nabozny. Each time aggressive action was promised. And, each time nothing was done.

Finally, in his eleventh grade year, Nabozny withdrew from Ashland High School. Hanson told Nabozny and his parents that school administrators were unwilling to help him and that he should seek educational opportunities elsewhere. Nabozny left Ashland and moved to Minneapolis where he was diagnosed with Post Traumatic Stress Disorder. In addition to seeking medical help, Nabozny sought legal advice.

On February 6, 1995, Nabozny filed the instant suit pursuant to 42 U.S.C. § 1983 against Mary Podlesny, William Davis, Thomas Blauert, Steven Kelly, and the District alleging, among other things, that the defendants violated his Fourteenth Amendment rights to equal protection and due process. By an agreement between the parties, Steven Kelly was dropped from the suit.[4] The remaining defendants moved for summary judgment.

The district court ruled in favor of the defendants. The court dispensed with Nabozny's gender equal protection claim, holding that Nabozny failed to produce evidence to establish that the defendants discriminated against him based on his gender. The court did not specify its basis for deciding Nabozny's sexual orientation equal protection claim. It appears from the order, however, that the court intended the reasoning that it applied to Nabozny's gender claim to apply to the sexual orientation claim as well. Regarding Nabozny's due process claims, the court concluded that Nabozny failed to produce evidence to establish that the defendants either created or exacerbated the risk of harm to Nabozny posed by other students. The court also concluded that Nabozny could not prevail on his claim that the defendants' policies encouraged a climate in which Nabozny suffered harm because none of Nabozny's assailants were state actors. In the alternative, the court granted qualified immunity to all of the defendants against all of Nabozny's claims. Nabozny now brings this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### III.

We will begin our analysis by considering Nabozny's equal protection claims, reserving Nabozny's due process claims for subsequent treatment in the opinion. Wisconsin has elected to protect the students in its schools from discrimination. Wisconsin statute section 118.13(1), regulating general school operations, provides that:

No person may be denied ... participation in, be denied the benefits of or be discrimi-

nated against in any curricular, extracurricular, pupil services, recreational or other program or activity because of the person's sex, race, religion, national origin, ancestry, creed, pregnancy, marital or parental status, sexual orientation or physical, mental, emotional or learning disability.

Since at least 1988, in compliance with the state statute, the Ashland Public School District has had a policy of prohibiting discrimination against students on the basis of gender or sexual orientation. The District's policy and practice includes protecting students from student-on-student sexual harassment and battery. Nabozny maintains that the defendants denied him the equal protection of the law by denying him the protection extended to other students, based on his gender and sexual orientation.

■■■■ The Equal Protection Clause grants to all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). When a state actor turns a blind eye to the Clause's command, aggrieved parties such as Nabozny can seek relief pursuant to 42 U.S.C. § 1983. *Cf. Muckway v. Craft,* 789 F.2d 517, 521 (7th Cir.1986) (noting that a § 1983 claim is a tort action, requiring proof of duty, breach, causation, and damages). In order to establish liability under § 1983, Nabozny must show that the defendants acted with a nefarious discriminatory purpose, *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979), and discriminated against him based on his membership in a definable class. *Albright v. Oliver,* 975 F.2d 343, 348 (7th Cir.1992), *aff'd,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Falls v. Town of Dyer,* 875 F.2d 146, 148 (7th Cir.1989). As we explained in *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982):

The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff

---

4. Kelly was Superintendent of the Ashland Public School District at the time that the suit was filed.

He was not, however, Superintendent at the time that the events at issue occurred.

must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Id.* at 1104 (citations and internal quotations omitted). A showing that the defendants were negligent will not suffice. Nabozny must show that the defendants acted either intentionally or with deliberate indifference. *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989); *Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984); *Shango,* 681 F.2d at 1104; *Cf. Muckway,* 789 F.2d at 522 (holding that a violation of a state law does not establish an equal protection violation absent proof that the defendant intentionally discriminated against otherwise similarly situated persons). To escape liability, the defendants either must prove that they did not discriminate against Nabozny, or at a bare minimum, the defendants' discriminatory conduct must satisfy one of two well-established standards of review: heightened scrutiny in the case of gender discrimination, or rational basis in the case of sexual orientation.

The district court found that Nabozny had proffered no evidence to support his equal protection claims. In the alternative, the court granted to the defendants qualified immunity. Considering the facts in the light most favorable to Nabozny, we respectfully disagree with the district court's conclusions.[5]

## A. Gender and Equal Protection.

The district court disposed of Nabozny's equal protection claims in two brief paragraphs. Regarding the merits of Nabozny's gender claim, the court concluded that "[t]here is absolutely nothing in the record to indicate that plaintiff was treated differently because of his gender." The district court's conclusion affords two interpretations: 1) there is no evidence that the defendants treated Nabozny differently from other students; or, 2) there is no evidence that the discriminatory treatment was based on Nabozny's gender. We will examine each in turn.

■ The record viewed in the light most favorable to Nabozny, combined with the defendants' own admissions, suggests that Nabozny was treated differently from other students. The defendants stipulate that they had a commendable record of enforcing their anti-harassment policies. Yet Nabozny has presented evidence that his classmates harassed and battered him for years and that school administrators failed to enforce their anti-harassment policies, despite his repeated pleas for them to do so. If the defendants otherwise enforced their anti-harassment policies, as they contend, then Nabozny's evidence strongly suggests that they made an exception to their normal practice in Nabozny's case.

Therefore, the question becomes whether Nabozny can show that he received different treatment because of his gender. Nabozny's evidence regarding the defendants' punishment of male-on-female battery and harassment is not overwhelming. Nabozny contends that a male student that struck his girlfriend was immediately expelled, that males were reprimanded for striking girls, and that when pregnant girls were called "slut" or "whore," the school took action. Nabozny's evidence does not include specific facts, such as the names and dates of the individuals involved. Nabozny does allege, however, that when he was subjected to a mock rape Podlesny responded by saying "boys will be boys," apparently dismissing the incident because both the perpetrators and the victim were males. We find it impossible to believe that a female lodging a

---

5. Our normal practice is to first address determinations of qualified immunity, then address the merits. In the interest of clarity, we shall depart from that practice in this case and address the issues in the order followed by the district court below.

similar complaint would have received the same response.

More important, the defendants do not deny that they aggressively punished male-on-female battery and harassment. The defendants argue that they investigated and punished all complaints of battery and harassment, regardless of the victim's gender. According to the defendants, contrary to the evidence presented by Nabozny, they aggressively pursued each of Nabozny's complaints and punished the alleged perpetrators whenever possible. Like Nabozny, the defendants presented evidence to support their claim. Whether to believe the defendants or Nabozny is, of course, a question of credibility for the fact-finder. In the context of considering the defendants' summary judgment motion, we must assume that Nabozny's version is the credible one. If Nabozny's evidence is considered credible, the record taken in conjunction with the defendants' admissions demonstrates that the defendants treated male and female victims differently.

■ The defendants also argue that there is no evidence that they either intentionally discriminated against Nabozny, or were deliberately indifferent to his complaints. The defendants concede that they had a policy and practice of punishing perpetrators of battery and harassment. It is well settled law that departures from established practices may evince discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 564–65, 50 L.Ed.2d 450 (1977). Moreover, Nabozny introduced evidence to suggest that the defendants literally laughed at Nabozny's pleas for help. The defendants' argument, considered against Nabozny's evidence, is simply indefensible.

■ Our inquiry into Nabozny's gender equal protection claim does not end here, because the district court granted to the defendants qualified immunity. The District itself clearly is not entitled to qualified immunity. *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 650–51, 100 S.Ct. 1398, 1415–16, 63 L.Ed.2d 673 (1980) (denying to municipalities qualified immunity based on good faith constitutional violations). There-fore, we need only consider whether the individual defendants are immune from suit.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. If the law was not "clearly established," no liability should result because "an official could not reasonably be expected to antici-pate subsequent legal developments, nor could be said to 'know' that the law forbade conduct not previously identified as unlaw-ful." *Id.* Thus, the critical questions in this case are whether the law "clearly estab-lishes" the basis for Nabozny's claim, and whether the law was so established in 1988 when Nabozny entered middle school. *Sher-man v. Four County Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir.1993).

The Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." In 1971, the Supreme Court inter-preted the Equal Protection Clause to pre-vent arbitrary gender-based discrimination. *See Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) ("To give a mandatory preference to members of either sex over members of the other ... is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause...."). A few years later, in *Wein-berger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), the Court held that discrimination based on "gender-based generalization[s]" in society runs afoul of the Equal Protection Clause. *Id.* at 645, 95 S.Ct. at 1232.

■ In *Mississippi University for Wom-en v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982), building on its earlier precedents, the Court went further in requir-ing equal treatment regardless of gender. In *Hogan*, the Court struck down a state statute that prevented males from enrolling in a state nursing school as violating the

Equal Protection Clause. *Id.* at 727, 102 S.Ct. at 3337–38. Rejecting Mississippi's argument that gender-biased enrollment criteria were necessary to compensate for prior discrimination, the Court held that "if the statutory objective is to exclude or 'protect' members of one gender because they are presumed to suffer from an inherent handicap or to be innately inferior, the objective itself is illegitimate." *Id.* at 725, 102 S.Ct. at 3336. *Hogan* made clear, in 1982, that state-sponsored educational institutions may not discriminate in their protection of men and women based on a stereotype of feminine weakness or inferiority. It is now well settled that to survive constitutional scrutiny, gender based discrimination must be substantially related to an important governmental objective. *See Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir. 1986).[6]

■ Nonetheless, the defendants ask us to affirm the grant of qualified immunity because "there was no clear duty under the equal protection clause for the individual defendants to enforce every student complaint of harassment by other students the same way." The defendants are correct in that the Equal Protection Clause does not require the government to give everyone identical treatment. Nothing we say today suggests anything to the contrary. The Equal Protection Clause does, however, require the state to treat each person with equal regard, as having equal worth, regardless of his or her status. The defendants' argument fails because they frame their inquiry too narrowly. The question is not whether they are required to treat every harassment complaint the same way; as we have noted, they are not. The question is whether they are required to give male and female students equivalent levels of protection; they are, absent an important governmental objective, and the law clearly said so prior to Nabozny's years in middle school.[7]

■ The defendants bemoan the fact that there is no prior case directly on point with facts identical to this case. Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point. *See McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir.1992). The question is whether a reasonable state actor would have known that his actions, viewed in the light of the law at the time, were unlawful. *Id.* at 294. We believe that reasonable persons standing in the defendants' shoes at the time would have reached just such a conclusion.[8]

## B. Sexual Orientation and Equal Protection.

■ On the face of the summary judgment order, the fate of Nabozny's sexual orientation equal protection claim is unclear. In the order the district court never specifically discussed Nabozny's sexual orientation claim. There is little doubt, however, that

---

**6.** On June 26, 1996, the Supreme Court decided *United States v. Virginia,* —— U.S. ——, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). In *Virginia,* rather than employing more conventional heightened scrutiny parlance, the Court held that to defend gender based discrimination a state actor must demonstrate an "exceedingly persuasive justification." *Id.* at ——, 116 S.Ct. at 2274. We express no opinion on whether the Court's ruling heightens the level of scrutiny applied to gender discrimination in this circuit.

**7.** The defendants also argue that they were not required to protect Nabozny, citing *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* the Supreme Court ruled that the Due Process Clause confers "no affirmative right to governmental aid." *Id.* at 196, 109 S.Ct. at 1003. Relying on that principle the Court concluded that, except for cases where the State is holding a person in custody, "a State's failure to protect an individual against private violence" does not violate the Due Process Clause. *Id.* at 197, 109 S.Ct. at 1004. *DeShaney* was a due process case. Nabozny based his suit, in part, on due process theories which we will discuss later. But the Court's reasoning in *DeShaney* is inapplicable to Nabozny's equal protection arguments. As the Court noted in *DeShaney,* "[t]he State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause." *Id.* at 197 n. 3, 109 S.Ct. at 1004 n. 3.

**8.** It is worth noting that we do not understand the defendants to argue that their actions were motivated by an important governmental objective. We are unable to garner any important governmental objective that is furthered by the alleged gender discrimination in this case, and the defendants do not offer us one.

the district court intended for its order to dispose of Nabozny's suit in its entirety. In the interest of judicial economy, rather than remanding the claim back to the district court, we will assume that the court's disposition of Nabozny's sexual orientation claim was synonymous with, and on the same grounds as, the court's disposition of Nabozny's gender claim.[9]

■ First we must consider whether Nabozny proffered a sufficient evidentiary basis to support his claim. As we noted above, Nabozny's evidence, combined with the defendants' admissions, demonstrates that Nabozny was treated differently. What is more, Nabozny introduced sufficient evidence to show that the discriminatory treatment was motivated by the defendants' disapproval of Nabozny's sexual orientation, including statements by the defendants that Nabozny should expect to be harassed because he is gay.

■ Next we must consider whether the defendants are entitled to qualified immunity. In other words, we must determine whether reasonable persons in the defendants' positions would have known that discrimination against Nabozny based on his sexual orientation, viewed in the light of the law at the time, was unlawful.

Our discussion of equal protection analysis thus far has revealed a well established principle: the Constitution prohibits intentional invidious discrimination between otherwise similarly situated persons based on one's membership in a definable minority, absent at least a rational basis for the discrimination. There can be little doubt that homosexuals are an identifiable minority[10] subjected to discrimination in our society. Given the legislation across the country both positing and prohibiting homosexual rights, that proposition was as self-evident in 1988 as it is today. In addition, the Wisconsin statute expressly prohibits discrimination on the basis of sexual orientation. Obviously that language was included because the Wisconsin legislature both recognized that homosexuals are discriminated against, and sought to prohibit such discrimination in Wisconsin schools. The defendants stipulate that they knew about the Wisconsin law, and enforced it to protect homosexuals. Therefore, it appears that the defendants concede that they knew that homosexuals are a definable minority and treated them as such.[11]

9. The defendants allege that Nabozny waived his sexual orientation claim by failing to argue it in his response to the defendants' summary judgment motion. The defendants' argument lacks merit. We have previously held that even where the non-moving party fails to file a timely response to a motion for summary judgment, the district court must still review the uncontroverted facts and make a finding that summary judgment is appropriate as a matter of law. *Glass*, 2 F.3d at 739; *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir.1992). Assuming arguendo that Nabozny failed to defend his sexual orientation claim in the face of the defendants' summary judgment motion, the district court was not relieved of its obligation to consider the claim.

10. The Sixth Circuit has ruled that:

[T]he reality remains that no law can successfully be drafted that is calculated to penalize, or to benefit, or to protect, an unidentifiable group or class of individuals whose identity is defined by subjective and unapparent characteristics such as innate desires, drives, and thoughts. Those persons having a homosexual "orientation" simply do not, as such, comprise an identifiable class.... Because homosexuals generally are not identifiable "on sight" ...

they cannot constitute a suspect class or a quasi-suspect class....
*Equality Foundation of Greater Cincinnati v. City of Cincinnati*, 54 F.3d 261, 267 (6th Cir.1995). The Sixth Circuit's analysis appears to conflate the requirement that discrimination be based on membership in a definable class to trigger equal protection analysis, see *Albright*, 975 F.2d at 348, *Falls*, 875 F.2d at 148, with the requirement that the class have "obvious, immutable, or distinguishing characteristics" to trigger heightened or strict scrutiny. *High Tech Gays v. Defense Indust. Sec. Clearance Office*, 895 F.2d 563, 573 (9th Cir.1990). To the extent that the Sixth Circuit's position conflicts with our prior holdings, we are bound by the precedent of this circuit. We express no opinion on whether sexual orientation is an "obvious, immutable, or distinguishing" characteristic. However, it does seem dubious to suggest that someone would choose to be homosexual, absent some genetic predisposition, given the considerable discrimination leveled against homosexuals.

11. We do not mean to suggest that the constitutionality of the defendants' conduct turns on the existence of the Wisconsin statute. The fact that the conduct in question is illegal under the statute neither adds to, nor subtracts from, the conduct's constitutional permissibility. *See Muck-*

In this case we need not consider whether homosexuals are a suspect or quasi-suspect class, which would subject the defendants' conduct to either strict or heightened scrutiny. Our court has already ruled that, in the context of the military, discrimination on the basis of sexual orientation is subject to rational basis review. *See Ben–Shalom v. Marsh*, 881 F.2d 454, 464 (7th Cir.1989), *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990). The rational basis standard is sufficient for our purposes herein.

 Under rational basis review there is no constitutional violation if "there is any reasonably conceivable state of facts" that would provide a rational basis for the government's conduct. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313–14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). We are unable to garner any rational basis for permitting one student to assault another based on the victim's sexual orientation, and the defendants do not offer us one. Like Nabozny's gender claim, the defendants argue that they did not discriminate against Nabozny.

Absent any rational basis for their alleged discrimination, the defendants are left to argue that the principle that the Constitution prohibits discrimination between similarly situated persons based on membership in a delineable class was somehow unclear back in 1988. We find that suggestion unacceptable. As early as 1886 the Supreme Court held that if the law "is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). Further, almost every case that we have cited

thus far was decided prior to the events giving rise to this litigation.

Our discussion of qualified immunity cannot end without mentioning one case in the area of "homosexual rights" commonly cited during the period in question: *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). In *Bowers*, the Supreme Court ruled that state sodomy statutes that prohibit sodomy performed in private between two consenting adults do not run afoul of an individual's Fourteenth Amendment right to substantive due process. *Id.* at 191, 193–96, 106 S.Ct. at 2844, 2845–47. We will address Nabozny's due process arguments below. However, reliance on *Bowers* by the defendants in this case is misplaced. *Bowers* addressed the criminalization of sodomy. The defendants make no mention of sodomy as a motive for their discrimination. To the contrary, the defendants offer us no rational basis for their alleged conduct. The defendants certainly cannot rely on *Bowers's* rational basis analysis to establish qualified immunity when they do not assert a rational basis for their alleged conduct, and expressly maintain that they did not discriminate on the basis of sexual orientation.[12]

Therefore, although it presents a closer question than does Nabozny's gender claim, we hold that reasonable persons in the defendants' positions in 1988 would have concluded that discrimination against Nabozny based on his sexual orientation was unconstitutional.

## IV.

 Now we turn to Nabozny's due process arguments. We believe that in order to clarify the nature of Nabozny's due process theories, it is necessary to specify what Nabozny does not argue. However untenable it may be to suggest that under the Fourteenth Amendment a state can force a

---

*way*, 789 F.2d at 522–23 (discussing *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944)).

**12.** Of course *Bowers* will soon be eclipsed in the area of equal protection by the Supreme Court's holding in *Romer v. Evans*, ⎯⎯ U.S. ⎯⎯, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). *Romer*, which was decided following the oral argument

in this case, struck down on equal protection grounds a Colorado constitutional amendment that discriminated against homosexuals. Although *Romer* bolsters our analysis in this case to some extent, we do not rely on it. To do so would be especially inappropriate in the context of rejecting the defendants' qualified immunity argument.

student to attend a school when school officials know that the student will be placed at risk of bodily harm, our court has concluded that local school administrations have no affirmative substantive due process duty to protect students. *J.O. v. Alton Community Unit School Dist. 11*, 909 F.2d 267, 272–73 (7th Cir.1990). In *J.O. v. Alton Community Unit School District 11*, we relied on the Supreme Court's opinion in *DeShaney v. Winnebago County Department of Social Services* to conclude that school administrators do not have a "special relationship" with students. *Id.* at 272. Absent a "special relationship," a state actor has no duty to protect a potential victim. *Id.* at 272–73; *see DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005–06 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."). Nabozny has expressly stated that he does not challenge our holding in *Alton Community*, thereby forfeiting his right to do so. (Appellate Brief at 41 n. 13). A party's forfeiture of a legal argument prevents us from considering it because the argument is not before the court. *United States v. Hubbard*, 61 F.3d 1261, 1273 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1268, 134 L.Ed.2d 216 (1996); *John Doe v. United States*, 51 F.3d 693, 699 (7th Cir.1995); *United States v. Jones*, 34 F.3d 495, 499 (7th Cir.1994); *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir.1992); *United States v. Berkowitz*, 927 F.2d 1376, 1391 (7th Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct.

141, 116 L.Ed.2d 108 (1991). Having clarified Nabozny's forfeiture, we turn to the arguments that were raised by Nabozny.[13]

Nabozny argues that the defendants should be liable because they enhanced his risk of harm, and because their policies encouraged a climate in which he suffered harm. We will consider each theory in turn. First, Nabozny argues that by failing to punish his assailants the defendants exacerbated the risk that he would be harmed, or even encouraged the students to harm him. Nabozny relies on our opinion in *Reed v. Gardner*, 986 F.2d 1122 (7th Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993). In *Reed*, we considered a case in which police officers arrested the driver of an automobile, but left an intoxicated passenger on the side of the road with the keys to the car. *Id.* at 1124. After the police left, the intoxicated passenger drove the car onto the road and caused a serious accident. *Id.* The victims of the accident sued the police officers pursuant to § 1983 for leaving the intoxicated passenger on the side of the road, arguing that the officers' conduct deprived the victims of their Fourteenth Amendment right to due process. *Id.* at 1124–25. We reversed a lower court's dismissal of the complaint, ruling that state actors have a duty to care for citizens if the state actors' conduct "creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been." *Id.* at 1126. But we noted that the plaintiffs would lose on

---

**13.** The facts of this case are distinguishable from the facts in *Alton Community*. In *Alton Community*, a student who was molested by a teacher sued the school district and various administrators for her injuries, alleging that the defendants breached their duty to protect her. *Alton Community*, 909 F.2d at 268. Nothing suggests that the defendants in *Alton Community* were aware of the potential molestation, and failed to prevent it. There is evidence to suggest that Nabozny informed school officials that he was at risk, and that the officials took no action—for years. Moreover, in some cases schools arguably serve as temporary custodians of children, limiting parent's ability to care for children, or children's ability to care for themselves. Many parents and students depend on schools to provide students with food, shelter, discipline, guidance, and medical care, in addition to an education, while the

students are on campus. In this case, it seems that Ashland High even fulfilled a police function by providing a "police liaison" officer. Depending upon the state law, a student may be compelled to attend school. In a small town the state law requirement may be tantamount to a requirement that the student attend specific schools. The extent of a school's control over a student also might vary with the student's age; schools control kindergarten students more than high school students. It may be, therefore, that in some cases a school is in a custodial relationship with its students. Because Nabozny has failed to argue that *Alton Community* can be distinguished, these are issues necessarily left for another day. We mention them here only to make clear that they are not foreclosed to future litigants by our opinion.

summary judgment if the defendants could show that the arrested driver was also intoxicated: "[t]he reason is simple: without state intervention, the same danger would exist." *Id.* at 1125.

■ We agree with Nabozny in principle that the defendants could be liable under a due process theory if Nabozny could show that the defendants created a risk of harm, or exacerbated an existing one. After a thorough review of the record, however, we must agree with the district court that Nabozny's claim suffers from a paucity of evidence. Nabozny has presented evidence to show that the defendants failed to act, and that their failure to act was intentional. But, as we noted, *Alton Community* held that the defendants had no affirmative duty to act. The defendants' failure to act left Nabozny in a position of danger, but nothing suggests that their failure to act placed him in the danger, or increased the pre-existing threat of harm. Nabozny has presented "wrenching" facts, but there is insufficient evidence from which a reasonable factfinder could conclude that the defendants' conduct increased the risk of harm to Nabozny beyond that which he would have faced had the defendants taken no action. *See Reed,* 986 F.2d at 1125.

■ Under Nabozny's second theory, he argues that the defendants violated his right to due process by acting with deliberate indifference in maintaining a policy or practice of failing to punish his assailants, thereby encouraging a harmful environment. *Alton Community,* 909 F.2d at 273; *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 725 (3rd Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990). The district court rejected Nabozny's argument because the harm he suffered was not perpetrated by school employees. On appeal, Nabozny challenges the district court's reasoning, arguing that liability can result regardless whether students or teachers inflicted the harm.

The district court relied on *D.R. by L.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364 (3rd Cir.1992) (en banc), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993). In *Middle Bucks,* the Third Circuit considered constitutional claims brought against a school by two female students for injuries the students suffered at the hands of male students. *Id.* at 1365–66. The plaintiffs alleged, among other things, that the school's policy of not punishing the perpetrators violated their rights to due process. *Id.* at 1376. The court of appeals concluded that because the acts perpetrated against the student plaintiffs were not perpetrated by a school employee, there was no state action, and thus no § 1983 claim against the defendants. *Id.* at 1376.

We prefer not to rest our holding on *Middle Bucks.* Although *Middle Bucks* suggests that in the context of a "state created danger" liability can result from an "intermingling of state conduct with private violence," *id.* at 1375, language elsewhere in the opinion appears to foreclose the possibility of liability in cases where state actors intentionally formulate policies or practices that encourage one private actor to injure another. *Id.* at 1376. We see no need to go that far in this case. Even assuming arguendo that a state actor can be liable for intentionally adopting a policy that encourages one private actor to harm another, Nabozny's claim fails.

Nabozny argues, and presents facts suggesting, that the defendants had a policy or practice of ignoring his pleas for help, and that as a result, he was repeatedly assaulted. Nabozny's theory has one fatal flaw: it rests on a failure to act. Under *Alton Community* the defendants had no duty to act. Therefore, to hold them liable for adopting a practice of failing to act would run directly counter to *Alton Community.*

### Conclusion.

We conclude that, based on the record as a whole, a reasonable fact-finder could find that the District and defendants Podlesny, Davis, and Blauert violated Nabozny's Fourteenth Amendment right to equal protection by discriminating against him based on his gender or sexual orientation. Further, the law establishing the defendants' liability was sufficiently clear to inform the defendants at the time that their conduct was unconstitutional. Nabozny's equal protection claims

against the District, Podlesny, Davis, and Blauert are reinstated in toto. We further conclude that Nabozny has failed to produce sufficient evidence to permit a reasonable fact-finder to find that the defendants violated Nabozny's Fourteenth Amendment right to due process either by enhancing his risk of harm or by encouraging a climate to flourish in which he suffered harm. Our disposition of Nabozny's due process claims renders the district court's award of qualified immunity as to those claims moot.[14] The decision of the district court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

14. The parties shall be responsible for their respective costs.