324 F.3d 1130
 Alana FLORES; F. F., a minor, by and through guardian ad litem; J.D., a minor, by and through guardian ad litem; C.L., a minor, by and through guardian ad litem; M.L., a minor, by and through guardian ad litem; V.P., a minor, by and through guardian ad litem; P.P., Plaintiffs-Appellees,
v.
MORGAN HILL UNIFIED SCHOOL DISTRICT; Carolyn McKennan, Superintendent; Bob Davis, Principal; Delia Schizzano, Assistant Superintendent; Maxine Bartschi, Assistant Principal; Rick Gaston; Larry Carr, President; Susan Martimo Choi; Del Foster; Rick Herder; Don Schaefer; and Frank Nucci, Defendants-Appellants, and
Megan Avevedo; Cheryl Washington, Defendants.
 No. 02-15128.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted December 11, 2002.
 Filed April 8, 2003.
 
 COPYRIGHT MATERIAL OMITTED Mark E. Davis and Marc J. Cardinal, Needham, Davis, Kirwan & Young, LLP, San Jose, CA, for the defendants-appellants.
 James Emery and Jill K. Ginstling, Keker & Van Nest, LLP, San Francisco, CA, for the plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California; James Ware, District Judge, Presiding. D.C. No. CV-98-20358-JW(PVT).
 Before: SCHROEDER, Chief Judge, PAEZ and TALLMAN, Circuit Judges.
 SCHROEDER, Chief Judge:
 
 
 1
 Plaintiffs are former students in the Morgan Hill Unified School District who have sued the school district, administrators, and school board members under 42 U.S.C. § 1983. Plaintiffs claim that the defendants' response or lack of response to complaints of student-to-student anti-homosexual harassment denied them equal protection. Defendants moved for summary judgment on the ground of qualified immunity. The district court denied summary judgment.
 
 
 2
 When the defendants first appealed the denial to this court, we remanded the case for reconsideration in light of the Supreme Court's intervening decision in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). See Flores v. Morgan Hill Unified Sch. Dist., 18 Fed.Appx. 646, 648 (9th Cir.2001). The district court then performed an analysis pursuant to Saucier and again denied defendants' motion for summary judgment.
 
 
 3
 Defendants appeal again. They contend that they are entitled to immunity from suit because the plaintiffs have not shown that the defendants acted with the improper motive required to establish a constitutional violation. Defendants also argue that at the time of the alleged harassment, the law was not clearly established that the students were entitled, under the Equal Protection Clause of the Fourteenth Amendment, to protection from peer sexual orientation harassment. We affirm because we find sufficient evidence for a jury to infer that defendants acted with deliberate indifference. We also hold that the law was clearly established and that the evidence would support a finding that the administrators' actions were unreasonable.
 
 
 I. BACKGROUND
 
 
 4
 The plaintiffs allege that during their time as students in public schools within the Morgan Hill Unified School District ("the District"), they suffered anti-gay harassment by their classmates. The alleged harassment took place between 1991 and 1998. All of the plaintiffs were, or were perceived by other students to be, lesbian, gay, or bisexual.
 
 
 5
 The plaintiffs recount incidents in which the named defendants and their agents, subordinates, and employees allegedly responded to the plaintiffs' complaints in a discriminatory fashion. Flores and the other plaintiffs allege that teachers and administrators failed to stop name-calling and anti-gay remarks, and that the administrators responded with inadequate disciplinary action to physical abuse.
 
 
 6
 The following is a sampling of incidents that the plaintiffs have described in affidavits or depositions. On several occasions, plaintiff Alana Flores found pornography and notes to the effect of "Die, dyke bitch" inside her locker. Similar messages were scrawled on the outside of her locker. When Flores showed one note to an assistant principal, defendant Delia Schizzano, and asked to be reassigned to a new locker, Schizzano allegedly replied, "Yes, sure, sure, later. You need to go back to class. Don't bring me this trash any more. This is disgusting." During the conversation, the assistant principal allegedly asked Flores, "Are you gay?" When Flores answered, "No, no. I'm not gay," she was asked, "Why are you crying, then?" Flores alleges that she continued to receive notes and pornography in her locker, and continued to bring these materials to Schizzano's attention, but that school officials took no action.
 
 
 7
 The complaint alleges that during plaintiff FF's time at Martin Murphy Middle School, he was beaten by six other students who said, "Faggot, you don't belong here." He was hospitalized and treated for "severely bruised ribs." The incident was reported to Principal Don Schaefer and Assistant Principal Frank Nucci. Schaefer and Nucci punished only one of the six students involved in the incident, and FF was transferred to another school.
 
 
 8
 Plaintiffs CL and HA, two female students, allege that other students began making anti-gay comments and sexual gestures at them when they began dating during their senior year at Live Oak High School. On one occasion, a group of boys in the school parking lot shouted anti-gay slurs and threw a plastic cup at the girls. CL and HA reported the incident to defendant Assistant Principal Maxine Bartschi. Bartschi told the girls to report the incident to a campus police officer, and did not follow-up with them or conduct her own investigation of the incident.
 
 
 9
 JD alleges that she was subjected to name-calling and food throwing. She complained to a campus monitor, with no effect. One campus monitor would not take action to stop the harassment, even when it repeatedly occurred in her presence. On one occasion, that campus monitor initiated a rumor among the students that JD and another female student were having oral sex in the bathroom. JD alleges that she also complained to a teacher that her classmates in physical education class called her "dyke" and "queer," and made comments such as "Oh, I don't want [JD] to touch me. I don't want her to look at me. I don't want to be her [weight training] partner." According to JD, the teacher failed to take action against the harassers, and instead suggested that JD change clothes away from the locker room so that her classmates would not feel uncomfortable.
 
 
 10
 The plaintiffs brought suit under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972(20 U.S.C. §§ 1681-88), the California Constitution, and California statutes. This interlocutory appeal relates only to the plaintiffs' § 1983 claim that the defendants denied the plaintiffs' Fourteenth Amendment right to equal protection on the basis of their actual or perceived sexual orientation.
 
 
 11
 Defendants first moved for summary judgment on the merits of the equal protection claim. The district court granted summary judgment for the defendant school board members on the ground that there was insufficient evidence to create a genuine issue of fact regarding sexual orientation discrimination by the school board. The district court explicitly denied summary judgment in favor of defendant school administrators Bartschi, Davis, Gaston, and Schizzano, determining that there was sufficient evidence to create a triable issue of fact. Although the district court's order did not name defendant administrators Schaefer and Nucci, we assume that summary judgment on the ground of evidentiary insufficiency was denied for them as well. This is because they and the other remaining defendants then filed a motion for summary judgment on the ground of qualified immunity.
 
 
 12
 The district court originally denied qualified immunity because it concluded that the law was clearly established, which was the only issue the court could consider under the law in this circuit at that time. See Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1449 (9th Cir.1995). The defendants appealed the denial of qualified immunity to this court. We vacated the district court's decision and remanded the case in an unpublished disposition. See Flores, 18 Fed.Appx. at 648. The Supreme Court's intervening decision in Saucier required the district court to determine first whether the facts established a constitutional violation before considering whether the law was clearly established.
 
 
 13
 On remand, the district court held that the plaintiffs presented evidence upon which a jury could find that the defendants failed to take action to stop the harassment and were motivated by the plaintiffs' actual or perceived sexual orientation. The district court also held that the right to be free from discrimination on the basis of sexual orientation was clearly established. Defendants filed this interlocutory appeal of the denial of qualified immunity. We affirm.
 
 
 II. APPELLATE JURISDICTION
 
 
 14
 Our jurisdiction over this type of appeal is well-established. Under the collateral order doctrine, an interlocutory ruling of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The denial of a claim of qualified immunity falls within this class of cases and is therefore an appealable "final decision" within the meaning of 28 U.S.C. § 1291. This is due in part to the fact that qualified immunity is an immunity from suit rather than a mere defense to liability, and immunity is effectively lost if a case is erroneously permitted to go to trial. Mitchell v. Forsyth, 472 U.S. 511, 526-27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 
 III. QUALIFIED IMMUNITY
 
 
 15
 We must decide whether the defendant school administrators enjoy qualified immunity from suit for the actions they are alleged to have taken. Government officials who perform discretionary functions generally are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
 
 
 A. Constitutional Violation
 
 
 16
 The initial inquiry is whether the defendants violated the plaintiffs' constitutional rights. See Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151. To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional. See Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740(9th Cir.2000); Oona, R.S. v. McCaffrey, 143 F.3d 473, 476 (9th Cir.1998). The plaintiffs are members of an identifiable class for equal protection purposes because they allege discrimination on the basis of sexual orientation. See High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 570-71 (9th Cir.1990).
 
 
 17
 In their complaint, the plaintiffs alleged that the defendants failed to enforce the District's disciplinary, anti-harassment and anti-discrimination policies to prevent physical and emotional harm to the plaintiffs. We view the record in the light most favorable to the plaintiffs. See Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir.2002). The record suggests that the defendants treated plaintiffs' complaints of harassment differently from other types of harassment. The record contains evidence that the defendants believed that, under District policies, harassment of any kind would not be tolerated. The plaintiffs presented evidence, however, that they were harassed for years and that the defendants failed to enforce these policies to protect them. When viewed in the context of the other evidence plaintiffs presented and their interactions with the defendants, there is sufficient evidence for a jury to reasonably find that plaintiffs were treated differently. See Nabozny v. Podlesny, 92 F.3d 446, 454 (7th Cir.1996).
 
 
 18
 The record also contains sufficient evidence for a jury to find that the defendants acted with an unconstitutional motive. We agree with the other circuits that have considered similar issues that the plaintiffs must show either that the defendants intentionally discriminated or acted with deliberate indifference. See Nabozny, 92 F.3d at 454; Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 140 (2d Cir. 1999). "Deliberate indifference" is found if the school administrator "respond[s] to known peer harassment in a manner that is ... clearly unreasonable." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 649, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). To survive summary judgment on the issue of motive, the plaintiffs must "`put forward specific, nonconclusory factual allegations' that establish improper motive." Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir.2001) (quoting Crawford-El v. Britton, 523 U.S. 574, 598, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). We agree with the district court that the plaintiffs presented sufficient evidence to raise an inference of deliberate indifference as to each of the administrator defendants. We deal with each in turn.
 
 
 1. Defendant Bartschi
 
 
 19
 The record contains evidence that Assistant Principal Maxine Bartschi failed to follow-up or conduct an independent investigation after two of the plaintiffs reported to her that they were assaulted by a group of students in the Live Oak High School parking lot. Bartschi's sole response was to tell the students to report the incident to a campus police officer. According to the plaintiffs, Bartschi took no action to locate or discipline the harassing students. The jury may find deliberate indifference despite Bartschi referring the girls to the campus police. See Nabozny, 92 F.3d at 452, 458.
 
 
 2. Defendant Davis
 
 
 20
 The record contains sufficient evidence for a jury to infer that Principal Bob Davis was deliberately indifferent in responding to plaintiff Flores' and FF's report of an incident in the quad area where a student handed them a pornographic depiction of heterosexual sex acts. Although there were several students involved in the incident, Davis disciplined only one of them. He also failed to take any further action after Flores and FF complained that the atmosphere in the school was hostile and that the student was bragging that his punishment was light. Davis' failure to take any further steps once he knew his remedial measures were inadequate supports a finding of deliberate indifference. See Vance v. Spencer County Pub. Sch. Dist., 231 F.3d 253, 262 (6th Cir.2000).
 
 
 3. Defendant Gaston
 
 
 21
 When two students reported harassment by other students and a campus monitor to Assistant Principal Rick Gaston, he acknowledged that the students had a hard time on campus because they were gay. The extent of his response, however, was to refrain from disciplining the two students for being in the hall without a hall pass. Gaston's failure to take any steps to investigate and stop the harassment would support a finding of deliberate indifference. See Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1034 (9th Cir. 1998).
 
 
 4. Defendants Schaefer and Nucci
 
 
 22
 Principal Don Schaefer and Assistant Principal Frank Nucci disciplined only one of the six students who physically assaulted FF at the bus stop while he attended Martin Murphy Middle School. Although Schaefer recommended expulsion for one student, the failure to take any disciplinary action against the other five students is sufficient to infer deliberate indifference. See Vance, 231 F.3d at 262-63(finding that failure to discipline harassing students reflects deliberate indifference).
 
 
 5. Defendant Schizzano
 
 
 23
 The record contains evidence that Schizzano took no action to stop the harassment Flores reported, including the defacing of her locker and the placing of notes and pornography inside it. Schizzano promised more than once to change Flores' locker, but failed to follow through, and instead told Flores not to bring her the pornography that she found in her locker again. Schizzano's failure to do anything about the ongoing harassment supports an inference of deliberate indifference. See Monteiro, 158 F.3d at 1034.
 
 
 6. Failure to Train
 
 
 24
 The plaintiffs have also produced sufficient evidence that the defendants failed to adequately train teachers, students, and campus monitors about the District's policies prohibiting harassment on the basis of sexual orientation. The record contains evidence that training regarding sexual harassment was limited and did not specifically deal with sexual orientation discrimination. The defendants also inadequately communicated District anti-harassment policies to students despite defendants' awareness of hostility toward homosexual students at the schools, and in some cases despite plaintiffs' requests to do so. A jury may conclude, based on this evidence, that there was an obvious need for training and that the discrimination the plaintiffs faced was a highly predictable consequence of the defendants not providing that training. See Plumeau v. School Dist. No. 40, 130 F.3d 432, 439 n. 4 (9th Cir.1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 409-11, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997)).
 
 
 B. Clearly Established Law
 
 
 25
 Defendants are entitled to qualified immunity only if the law at the time of the alleged constitutional violation was not clearly established. See Saucier, 533 U.S. at 201-02, 121 S.Ct. 2151. The defendants contend that the law was not clearly established because, during the relevant years, 1991-1998, no Supreme Court or Ninth Circuit case had yet established a student's right under the Equal Protection Clause of the Fourteenth Amendment to be protected by school administrators from peer sexual orientation harassment. In order to find that the law was clearly established, however, we need not find a prior case with identical, or even "materially similar," facts. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). Our task is to determine whether the preexisting law provided the defendants with "fair warning" that their conduct was unlawful. Id.
 
 
 26
 Here, the plaintiffs allege that the defendants failed to enforce the District's policies because of the plaintiffs' sexual orientation. As early as 1990, we established the underlying proposition that such conduct violates constitutional rights: state employees who treat individuals differently on the basis of their sexual orientation violate the constitutional guarantee of equal protection. See High Tech Gays, 895 F.2d at 573-74 (finding that homosexuals are not a suspect or quasi-suspect class, but are a definable group entitled to rational basis scrutiny for equal protection purposes). It is not necessary to find a case applying the principle to a particular category of state officials, such as school administrators. The defendants were officers of the state who had fair warning that they could not accord homosexual and bisexual students less protection on account of such students' sexual orientation.
 
 
 27
 Defendants also contend that the law was not clearly established because the constitutional duty was not spelled out in a statute or federal regulation. Case law alone, however, can render the law clearly established. We have held that where prior cases have delineated governing legal principles, the law is "clearly established" for immunity purposes regardless of whether a statute or regulation is the source. See, e.g., Armendariz v. Penman, 75 F.3d 1311, 1326-28(9th Cir.1996) (en banc) (finding that equal protection case law clearly established that city officials could not target plaintiffs for overzealous enforcement of housing code).
 
 
 28
 The Seventh Circuit has expressly held that school administrators are not immune from an equal protection claim involving peer sexual orientation harassment. Nabozny, 92 F.3d at 460-61. The court there referred to a state statute that prohibited schools from discriminating on the basis of sexual orientation during the time period at issue in that case. Id. at 453. Thus, those particular defendants should have had actual knowledge of the illegality of their conduct.
 
 
 29
 The Seventh Circuit in Nabozny, however, went out of its way to point out that the unconstitutionality of the defendants' conduct did not turn on the existence of the statute. Nabozny, 92 F.3d at 457 n. 11. Rather, it held that the decisional law was sufficiently established to put defendants on notice of their obligations to gay and lesbian students, regardless of the existence of the statute. See id. at 457 n. 11, 458. Here, our 1990 decision in High Tech Gays established that homosexuals were a definable minority prior to the period of the alleged discrimination in this case. The absence of a state statute, therefore, does not point us to a conclusion that differs from that of the Seventh Circuit.
 
 
 30
 The defendants argue that even if the right was clearly established, no prior case defined the scope of a school administrator's duty to investigate or remedy peer sexual orientation harassment. The guarantee of equal protection, however, does not itself prescribe specific duties. It requires the defendants to enforce District policies in cases of peer harassment of homosexual and bisexual students in the same way that they enforce those policies in cases of peer harassment of heterosexual students. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall `deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."). Here, it is alleged that the defendants discriminated in the enforcement of school policies that required investigation and remedy of student harassment. The constitutional violation lies in the discriminatory enforcement of the policies, not in the violation of the school policies themselves.
 
 
 31
 The defendants also argue that their actions were reasonable because they did not respond to the reports of harassment with inaction. Instead, they argue that they took some steps which may have been ineffective, but do not indicate deliberate indifference. We conclude, however, that in light of the evidence plaintiffs presented, a jury could find that the defendants took no more than the minimal amount of action in response to the complaints of harassment. Cf. Hagan v. Houston Indep. Sch. Dist., 51 F.3d 48, 52-53 (5th Cir.1995) (finding qualified immunity where the principal interviewed numerous people, documented his investigation, reported the findings to his supervisor, and requested further direction). Thus, qualified immunity is not appropriate.
 
 
 32
 The defendants do not advance any reason to justify the alleged differential enforcement of District policies. Here, as in Nabozny, "[w]e are unable to garner any rational basis for permitting one student to assault another based on the victim's sexual orientation, and the defendants do not offer us one." Nabozny, 92 F.3d at 458.
 
 CONCLUSION
 
 33
 For the foregoing reasons, we affirm the district court's denial of summary judgment on qualified immunity grounds. The record contains sufficient evidence for a jury to conclude that the defendants intentionally discriminated against the plaintiffs in violation of the Equal Protection Clause. At the time of the harassment, the plaintiffs' right to be free from intentional discrimination on the basis of sexual orientation was clearly established.
 
 
 34
 AFFIRMED.