**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 6, 2014
Decided July 9, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 13-3701

| | |
|---|---|
| RICKEY L. DAVIS and SHERONDA DAVIS, next best friends of M.D., *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| *v.* | No. 11-cv-00771 |
| CARMEL CLAY SCHOOLS, *Defendant-Appellee*. | **Sarah Evans Barker**, *Judge*. |

## O R D E R

Four high school basketball players who were seniors mistreated a freshman in the varsity locker room at Carmel High School and while on a bus trip. Alleging both federal and state claims, the parents of the freshman brought this action in federal court against the high school. The high school moved for partial summary judgment with

respect to the federal claims. The district court granted that motion and entered final judgment against the plaintiffs with respect to the federal claims, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The plaintiffs appeal. We affirm.

## I. Facts

During the 2009–10 school year, M.D. was a freshman at Carmel High School ("the School"). Because of his poor academic performance, he was ineligible to play on the School's basketball team, but the freshman basketball coach, Justin Blanding, agreed to help M.D. with his studies and encouraged him to spend time with the team. Although the School has a separate locker room for the freshman basketball team, M.D. testified that the varsity team manager (a student) assigned him a locker in the varsity basketball teams' locker room.

M.D. testified that, from November 2009 to January 2010, four senior basketball players ("the four seniors") harassed and assaulted him. M.D. testified, specifically, that the four seniors taunted him with sexual innuendos, grabbed (or tried to grab) his genitals, and flashed their own genitals at him on a nearly daily basis. He also testified that the four seniors "gooched" him a few times.[1] During one such incident, M.D. testified, the four seniors dragged him into the shower, tried to force his pants down, and then "gooched" him. M.D. testified that he screamed for help but that none of the other basketball players helped him. M.D. testified that he told the four seniors that "what they were doing was gay," but that they retorted, "it wasn't gay unless you cum." During another "gooching" incident, M.D. testified that one of the four seniors repeated that remark. M.D. also testified that one of the four seniors brushed his genitals against M.D. while simulating sex on more than one occasion. M.D. testified that he began wearing two pairs of shorts to make it harder for the four seniors to assault him.

On January 22, 2010, M.D. traveled with the School's basketball teams to Terre Haute, Indiana. On the ride back, three of the four seniors who had been harassing M.D. were seated at the back of the bus, and M.D. was seated near the front behind the

---

[1] The plaintiffs define "gooching" as "putting a person's hands or fingers between the buttocks of another person, and at times anally penetrating the person." But it is unclear whether the various witnesses in this case so understood the term.

coaches. M.D. testified that the three seniors started calling his name and that, while he initially ignored them, he eventually went to the back of the bus. M.D. testified that he was dragged down onto a seat, someone sat on his face, someone tried to pull down his pants, and one of the four seniors tried to stick his finger in or through M.D.'s pants. M.D. testified that he was then dragged to the ground and that, when he tried to move back to the front of the bus, other players blocked him with their legs. M.D. also testified that he screamed or called for help.

On February 16, 2010, the mother of another student called a nurse at the School and stated that she had learned from her son that M.D. had been assaulted on the bus ride back from Terre Haute. The allegations were forwarded to the School's administration and reported to the Carmel Police Department. Both the School and the police immediately began investigations. That day, three of the four seniors were suspended. Some days later, the fourth senior was suspended. Eventually all four seniors were expelled. Nevertheless, M.D.'s father decided to withdraw M.D. from the School because (he alleges) he was told by School administrators that three of the four seniors would be re-enrolled.

On June 7, 2011, M.D.'s parents, in their individual capacities and on behalf of M.D., sued the School in the United States District Court for the Southern District of Indiana.[2] The complaint asserted claims arising under federal and state law. The School filed a motion for partial summary judgment and sought dismissal of the federal claims. The district court granted that motion, but elected to retain supplemental jurisdiction over the remaining state law claims. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the district court entered final judgment against the plaintiffs with respect to the federal claims. This enabled the plaintiffs to appeal the order dismissing the federal claims, which they have done.[3]

---

[2] The plaintiffs also filed a state court action against the four seniors.

[3] In their appeal, the plaintiffs initially purported to raise challenges to the district court's decision to retain supplemental jurisdiction over the state claims and resolution of a separate motion for sanctions filed by the plaintiffs. However, after the School objected that those rulings were not within the scope of the district court's Rule 54(b) order, the plaintiffs filed a motion to voluntarily dismiss the appeal insofar as it extended to those

(continued...)

## II. Discussion

On appeal, the plaintiffs urge us to reverse the district court's grant of summary judgment with respect to the federal claims. We review the district court's grant of partial summary judgment *de novo*. *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). And we construe the evidence in the light most favorable to the non-moving party—here, the plaintiffs. *Id.* Nevertheless, we must affirm if there is no genuine issue of material fact, and the School is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Although the complaint is not entirely clear, the parties agree that the plaintiffs assert the following four federal claims: (1) an equal protection claim under § 1983; (2) a due process "state-created danger" claim under § 1983; (3) a "failure-to-train" claim under § 1983; and (4) a "peer-harassment" claim under Title IX.

All of these claims ultimately fail for substantially the same reason: because the admissible evidence does not establish that the School *actually* knew about the four seniors' mistreatment of M.D. until after the mistreatment ceased (and shortly before the School began its investigation).

To establish actual knowledge, the plaintiffs rely heavily on notes taken by the School's then-assistant principal, Kevin Gallman. He took the notes during interviews of students and parents that he conducted as part of the School's investigation into the allegations that M.D. had been assaulted on the bus. Relatedly, the plaintiffs rely on Gallman's subsequent deposition testimony (given after he was no longer an employee of the School) about the investigation.[4] The problem with Gallman's notes and

---

[3](...continued)
additional orders. We granted that motion "to the extent that this court will not consider any arguments that are outside the scope of the appeal from judgment on the federal claims." Doc. #27. So we do not address the plaintiffs' challenges to those orders here.

[4] According to these notes, one of the four seniors stated that Coach Christopher Vandenberg had previously referred to "gooching" and laughed about it without telling the students to stop. The senior disclaimed any personal responsibility for "extreme

(continued...)

deposition testimony is that they are only valuable as evidence of the School's actual knowledge to the extent they recount the statements of the individuals that Gallman interviewed. The district court ruled that Gallman's notes and deposition could not be considered at summary judgment because they were either unreliable unsworn affidavits or inadmissible hearsay. In their reply brief, the plaintiffs argue that the notes are admissible under Rule 803(6) of the Federal Rules of Evidence (the "Business Records" exception). However, the plaintiffs did not make this argument or otherwise challenge the district court's ruling in their opening brief on appeal. Therefore, they have forfeited any challenge to that ruling. *See United States v. Banas*, 712 F.3d 1006, 1010 n.1 (7th Cir. 2013) (observing that arguments not raised in an appellant's opening brief are forfeited).[5] Moreover, even if Gallman's hearsay notes were admissible under Rule 803(6), the hearsay statements of the students and parents contained within those hearsay notes would not be admissible. *See Woods v. City of Chi.*, 234 F.3d 979, 986 (7th Cir. 2000) ("'[T]he business records exception does not embrace statements contained within a business record that were made by one who is *not* a part of the business if the

---

[4](...continued)
circumstances," but stated that Coach Vandenberg told them during practice "you guys are touching other people's butts, that's weird and you need to stop." The senior also stated that "it" had been going on for three years, the coaches condoned it, and that "Galloway and other coaches knew about it and smirked and didn't stop it." Finally, the senior stated that another student reported to Coach Vandenberg what had happened on the bus. That senior's mother told Gallman that the senior himself had been a victim of "hazing incidents" the prior year. Another one of the four seniors told Gallman that "horseplay and joking around" were part of "the culture of the program," and that touching other students' butts was not confined to the bus but had already happened in the locker room. The senior also stated that "messing around" entailed "[t]ickling, making [the victims] feel uncomfortable, grabbing their butt," and sticking one's fingers up the victim's butt. (However, the senior also stated that, although it was not the first year this had happened, these seniors had taken it to another level.)

[5] In their opening brief, the plaintiffs relied upon this evidence without informing us that the district court had ruled that the evidence was inadmissible. Although this may suggest an implied challenge to the district court's evidentiary ruling, it strikes us as gamesmanship. Ignoring adverse rulings is not to be condoned. And we will not reward the plaintiffs by holding that to ignore a ruling on appeal is to impliedly challenge it.

embraced statements are offered for their truth.'" (quoting *United States v. Vigneau*, 187 F.3d 70, 75 (1st Cir. 1999))). Thus, we cannot consider this evidence in determining whether the School had actual knowledge of the assaults against M.D.

Turning to the plaintiffs' admissible evidence, Coach Vandenberg testified that another student, M.F., told Coach Vandenberg that the student and one of the four seniors had gotten into an altercation. But this evidence does nothing to establish that the School had actual knowledge that sexual assaults were occurring (much less knowledge of the assaults against M.D.). This is so because Coach Vandenberg testified that he asked M.F. if everything was alright and whether he and the senior were still friends and that M.F. replied "yes" and that there was no problem.

The plaintiffs also rely on the School's Coaches Handbook's requirement that coaches be present in the locker rooms while students are using them. If the coaches had complied with the Coaches Handbook, the plaintiffs reason, then they should have observed the assaults committed against M.D. But this argument only establishes that the coaches *should have known* of the assaults against M.D, which is not enough to establish *actual* knowledge of the assaults. Indeed, Coach Vandenberg and Coach Blanding testified that they never observed any assaults on M.D. (or any other student). The evidence that the coaches should have been in the locker room does not contradict the coaches' testimony that they did not actually know of the assaults. (Instead it tends to prove that the coaches likely were not present in the locker rooms when the assaults occurred.) Consequently, this evidence does not create a material dispute of fact regarding the School's actual knowledge of the four seniors' mistreatment of M.D.

Similarly, M.D. testified that he screamed or called for help when being assaulted at the back of the bus. However, he admitted that even he could not hear what was going on at the back of the bus from his seat, which was closer to the back of the bus than the coaches' seats, and that someone sat on his face during the assault. So this evidence at most provides a basis for inferring that the coaches at the front of the bus *should have known* about the assault while it was occurring. Again, that is insufficient to establish *actual* knowledge. Moreover, Coach Blanding testified that the bus was very loud and that he did not observe anything to suggest that any hazing, physical abuse, or sexual abuse was occurring on the bus. Similarly, Coach Vandenberg testified that he never noticed unacceptable conduct during a bus ride. The plaintiffs offer no evidence

contradicting the coaches' testimony that they did not actually observe the assault on the bus.

Finally, M.D. testified that he spoke to Coach Blanding once about what the four seniors were doing to him. M.D. testified that he was in Coach Blanding's office with one of the four seniors who had assaulted him, and that the senior "made a comment referring to Lubriderm." M.D. testified that Coach Blanding told everyone else (except one person) to leave the room and asked M.D. what the senior was talking about. M.D. testified that he told Coach Blanding "they were messing with me on the back of the bus on the way home, and they were messing with me in the locker room." When Coach Blanding "asked what," M.D. replied "they were fingering me in my behind." M.D. testified that this conversation occurred after the incident on the bus (and that no further mistreatment occurred after the incident on the bus), but M.D. did not specify the precise date of this conversation.[6]

In summary, at best, the plaintiffs' evidence establishes that the School developed actual knowledge of the four seniors' mistreatment of M.D. only *after* the mistreatment ceased. Thus, the plaintiffs' Title IX "peer-harassment" claim fails because the School can only be liable for failing to prevent harassment about which (or, more precisely, the risk of which) it has actual knowledge. *See Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823–24 (7th Cir. 2003) (holding, in a "peer-harassment" claim brought under Title IX, that a school district cannot be liable for harassment occurring prior to the date the district obtains actual knowledge of the harassment); *see also Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999) (defendants had actual notice of rape and sexual assault only after incidents were reported to them).

Similarly, the plaintiffs' § 1983 "state-created danger" and equal protection claims fail because the School could not be deliberately indifferent in failing to protect M.D. from mistreatment about which it lacked actual knowledge. *See Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654–55 (7th Cir. 2011) (holding that, in a "state-

---

[6] The plaintiffs allege that this meeting occurred on February 8, but they cite no evidence in support of that assertion. In his affidavit, Coach Blanding denies that he had this conversation with M.D. at all. But because we are reviewing a grant of summary judgment in the School's favor, we must accept M.D.'s testimony that the conversation did occur.

created danger" claim brought under § 1983 and based on the state's failure to protect an individual from harm by private actors, the plaintiff must demonstrate that the state acted with deliberate indifference to the rights of an individual); *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996) (holding that, in an equal protection claim against a school district brought under § 1983 and based on student-on-student sexual battery, proof of negligence is not enough and that the plaintiff must show that the school district "acted either intentionally or with deliberate indifference" in denying him the protection that the school had a policy of extending to other students); *see also Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) ("'[I]t is not enough to show that a state actor should have known of the danger his actions created. Rather, a plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent.'" (quoting *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996))).

Finally, the plaintiffs' § 1983 "failure-to-train" claim also requires proof that the School acted with deliberate indifference to M.D.'s rights—specifically by failing to train the teachers and coaches adequately to prevent the violation of M.D.'s rights. *See Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (holding that, in a "failure-to-train" claim brought under § 1983, "a municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the violation … ."). As relevant here, evidence of a repeated pattern or widespread practice of constitutional violations that makes the need for further training plainly obvious to the School's administration can establish deliberate indifference on the part of the School. *Id.* But because the School did not learn of the assaults against M.D. until after they occurred (and the plaintiffs do not come forward with sufficient evidence of a widespread pattern or practice of similar constitutional violations),[7] the School's administration had no basis to think its training was obviously inadequate and, consequently, the School cannot be liable under a "failure-to-train" theory.

---

[7] The plaintiffs contend that the School received a report of a sexual assault against a student on the swimming team in 1998. But a single prior violation, especially one so remote in time, cannot establish a repeated pattern or widespread practice of constitutional violations. *See Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (holding that four violations was insufficient to establish a pattern).

Moreover, no reasonable jury could find that the School's response—an investigation that commenced (at most) about a week after M.D.'s alleged report to Coach Blanding—"was clearly unreasonable in light of the known circumstances … ." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999). After all, M.D. suffered no further mistreatment after his alleged report to Coach Blanding or after the School began its investigation.

### III. Conclusion

Because the plaintiffs have failed to come forward with evidence from which a reasonable fact finder could find that the School had actual knowledge of the four seniors' mistreatment of M.D. before it ceased, we AFFIRM the district court's order granting the School's motion for partial summary judgment with respect to the plaintiffs' federal claims.